# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

NATIONWIDE MUTUAL INSURANCE
COMPANY, an Ohio corporation,

        Plaintiff,

v.

AVERY HOLDINGS, LLC, a Colorado limited
liability company,
AVERY EQUIPMENT, LLC, a Colorado limited
liability company,
AVERY ASPHALT SURFACING AND SYSTEMS,
INC., a Colorado corporation,
AVERY ASPHALT, INC., a Colorado corporation,
LBLA VENTURES, INC., a Colorado corporation,
REGIONAL PAVEMENT MAINTENANCE
OF ARIZONA, INC., an Arizona corporation,

        Defendants.
_____

## VERIFIED COMPLAINT
_____

For its Verified Complaint against Defendants, Plaintiff Nationwide Mutual
Insurance Company ("Nationwide" or "Surety") alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Nationwide is an Ohio corporation, with its principal place of business in the
State of Ohio.

2.      Avery Equipment, LLC ("Avery Equipment"), is, and was at all relevant
times, a Colorado limited liability company with its principal place of business in the State
of Colorado.

3.       Avery Asphalt Surfacing and Systems, Inc. ("Avery Asphalt Surfacing"), is, and was at all relevant times, a Colorado corporation with its principal place of business in the State of Colorado.

4.       Avery Asphalt, Inc. ("Avery Asphalt"), is, and was at all relevant times, a Colorado corporation with its principal place of business in the State of Colorado.  Avery Asphalt is also an Arizona foreign corporation, authorized to do business in Arizona.

5.       LBLA Ventures, Inc. ("LBLA"), is, and was at all relevant times, a Colorado corporation with its principal place of business in the State of Colorado.

6.       Defendant Avery Holdings, LLC ("Avery Holdings"), is, and was at all relevant times, a Colorado limited liability company with its principal place of business in the State of Colorado.

7.       Defendant Regional Pavement Maintenance of Arizona, Inc. ("Regional Pavement"), is, and was at all relevant times, an Arizona corporation.

8.       Upon information and belief, Regional Pavements' principal place of business where its director and officers conduct its business is located in the State of Colorado.

9.       Upon information and belief, Aaron Avery, as the director, sole shareholder, treasurer, and secretary directs and manages Regional Pavements' business operations from 7770 Venture Street, Colorado Springs, Colorado 80951.

10.       Upon information and belief, Aaron Avery directs and manages Regional Pavement's business using the following e-mail address - aaron@averyasphalt.com. – which is likewise associated with Defendant Avery Asphalt, Inc., a Colorado corporation with its principal place of business in the State of Colorado.

11.       Upon information and belief, Regional Pavements' qualified party associated with its Arizona Contractor License Nos. 316625 and 267126 issued by the Arizona Registrar of Contractors is Aaron Avery, a resident of Colorado.

12.       Avery Holdings, Avery Equipment, Avery Asphalt Surfacing, Avery

Asphalt, LBLA and Regional Pavement, are collectively referred to herein as "Indemnitors."

13.     The Indemnitors caused actions to occur within this judicial district from which this action arises.

14.     The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

15.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332, as the above-captioned case is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, $75,000.00.

16.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

17.     Nationwide is, and was at all relevant times, duly authorized to transact business as a surety issuing bonds in the States of Arizona and Colorado.

18.     Regional Pavement is, or at least was at all relevant times, a company doing business in the State of Arizona as a construction contractor.

19.     Avery Asphalt, is, or at least was at all relevant times, a company doing business in the State of Colorado as a construction contractor.

20.     Upon information and belief, Aaron Avery is, or at least was at all relevant times, a Colorado resident, an officer, director, shareholder, manager, member, partner, general partner, agent or otherwise principal of Regional Pavement, Avery Asphalt Surfacing, and LBLA.

21.     Upon information and belief, Earlena M. Avery is, or at least was at all relevant times, an officer, director, shareholder, manager, member, partner, general partner, agent or otherwise principal of Avery Holdings and Avery Equipment.

22.     Upon information and belief, Irving Avery is, or at least was at all relevant times, an officer, director, shareholder, manager, member, partner, general partner, agent or otherwise principal of Avery Asphalt.

23.     Upon information and belief, Andrew Avery is, or at least was at all relevant times, an officer, director, shareholder, manager, member, partner, general partner, agent or otherwise principal of Avery Asphalt.

### THE GENERAL INDEMNITY AGREEMENTS

24.     As a condition of and inducement for Nationwide's issuance of surety bonds on behalf of Regional Pavement, as bond "Principal," the Indemnitors jointly and severally entered into a "General Indemnity Agreement" dated August 25, 2017 as amended by Addendum No.1 dated April 16, 2019 (hereafter the "Regional Pavement Indemnity Agreement") in favor of Nationwide, as Surety. A true and accurate copy the Indemnity Agreement is attached as <u>Exhibit "A"</u> and incorporated herein by this reference.

25.     As a condition of and inducement for Nationwide's issuance of surety bonds on behalf of Avery Asphalt, as bond "Principal," the Indemnitors jointly and severally entered into a "General Indemnity Agreement" dated August 25, 2017 as amended by Addendum No.1 dated April 18, 2019 (hereafter the "Avery Indemnity Agreement") in favor of Nationwide, as Surety. A true and accurate copy the Indemnity Agreement is attached as <u>Exhibit "B"</u> and incorporated herein by this reference.  The Regional Pavement Indemnity Agreement and the Avery Indemnity Agreement are collectively referred to herein at the "Indemnity Agreements."

26.     Pursuant to the terms of the Indemnity Agreements, the Indemnitors agreed to indemnify and save Nationwide harmless against all claims, loss, costs and expenses that Nationwide might sustain in connection with any surety bond issued for the benefit of Regional Pavement and Avery Asphalt, as follows:

### INDEMNITY

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court courts, and attorney fees and expenses) which the Surety may sustain and incur:

(a) by reason of having executed or procured the execution of the Bonds,

(b) by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or

(c) in enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety by the Indemnitors shall be in an amount as determined by the Surety.

In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

*See* Exhibits A and B. at Second Paragraph, Indemnity.

27.    Pursuant to the terms of the Indemnity Agreements, Indemnitors agreed to assign, transfer, convey, and set over to Nationwide certain secured legal rights, as follows:

## ASSIGNMENT

FOURTH: With respect to each Bond executed by the Surety, the Contractor, with the Indemnitors hereby consenting, hereby assigns, transfers, conveys, and sets over to the Surety as collateral to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety:

(a) any and all monies due or to become due to the Contractor under or as a result of the contract covered by the Bond and all other contracts whether bonded or not in which the Contractor has an interest, including but not limited to progress payments, deferred payments, retained percentages, compensation for extra work, and proceeds of damage claims;

(b) all rights, title and interest of the Contractor in and to all supplies, tools, plant, equipment, and materials of every nature and description that may

now or hereafter be in, on or around the site of, or the work under, the contract covered by the Bond, and materials purchased or ordered for the performance of said contract whether in process of construction, in transit to the site, or in storage elsewhere;

(c) all rights, title, and interest of the Contractor in and to all subcontracts, let or to be let, in connection with said contract covered by the Bond and in and to all surety bonds covering such subcontracts;

(d) all actions, causes of actions, claims, and demands whatsoever with the Contractor's subcontractors, laborers, materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of the contract covered by the Bond, and against any surety or sureties of any such subcontractors, laborers, or materialmen; and

(e) any and all rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in or growing in any manner out of the Bonds.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date, although nothing herein shall limit the right of the Surety to claim under any prior assignment.  With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond.  The assignment with respect to each such Bond shall take effect on the date indicated, but only in the event of one or more of the following (hereinafter called "Events of Default"):

(a) any abandonment, forfeiture, or breach of or failure, refusal, or inability to perform any contract covered by a Bond or any Bond liability or any breach of any said Bonds;

(b) the failure, delay, refusal, or inability of the Contractor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(c) the failure to perform, comply with, any of the terms, covenants, and obligations of this Agreement;

(d) the failure to pay and discharge, when due, any other indebtedness of the Contractor to the Surety;

(e) any assignment by the Contractor for the benefit of creditors; or the appointment or an application for the appointment of a receiver or trustee for the Contractor or its property, whether insolvent or not; or an application by the Contractor for reorganization or arrangement under the terms of the federal bankruptcy laws or any similar laws of any state, possession, or territory of the United States;

(f) the commencement or continuation of any proceeding which deprives the Contractor of, or interferes with, its use of any of the supplies, tools, plant, machinery, equipment, or materials in, on or around the site of, or the work under the contract covered by any said Bond;

(g) the Contractor is an individual, the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony or imprisoned, and if the Contractor is any other type of entity, any change or threat of change in the character, identity, control, management, beneficial ownership, or existence of the Contractor.

The foregoing assignment is for purposes of (a) enabling the Surety to complete performance of the obligations of the Contractor under the contract covered by a bond and the payment of obligations incurred by the Contractor in the performance of such contract and (b) providing the Surety with collateral security for the obligations of the Contractor and Indemnitors to the Surety under this Agreement.

Upon the happening of an Event of Default, the Contractor authorizes and empowers the Surety, or any person or persons designated by the Surety, to execute in the name of the Contractor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property, and the rights as are hereby assigned, transferred, or conveyed, and the Contractor hereby authorizes the Surety or such person or persons designated by the Surety to take immediate possession of such funds, property, and rights, to collect such sums as may be due and to endorse, in the name of the Contractor, and to collect, any checks, drafts, warrants, and other instruments made and issued in payment of any such funds.

Upon the happening of an Event of Default, the Surety shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use and consume if necessary, the same in the performance of the contracts by itself or by other.

The Surety is authorized to assert and prosecute any right or claim hereby assigned, transferred, or conveyed in the name of the Contractor and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances.

The Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind.  The Surety may purchase any of the property at such sale.

This Agreement constitutes a Security Agreement to the Surety and a Financing Statement in accordance with the provisions of the Uniform Commercial Code. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under such Code, and the Contractor and Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties, and other places as the Surety shall deem necessary or desirable.

*See* Exhibits A and B at Fourth Paragraph, Assignment.

28.    Pursuant to the terms of the Indemnity Agreements, the Indemnitors also assigned to Nationwide certain secured legal interests, as follows:

## DEPOSIT

SIXTH: In order to exonerate or indemnify the Surety from actual or anticipated loss, the Contractor and Indemnitors, jointly and severally, shall, upon demand of the Surety, deposit with the Surety an amount, as determined by the Surety, as collateral security to the Surety before the Surety makes any payments. Such deposit shall be, at the Surety's option, money, property, or liens or security interests in property. The Surety shall have the right to use the deposit, or any part thereof, in payment of settlement of any liability, loss or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement whether or not the Surety has: (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. The Surety shall have no obligation to invest, or to provide a return on the deposit. The Contractor and Indemnitors shall be entitled to the return of any unused portion of the deposit upon termination of the liability of the Surety on the Bonds and the performance by the Contractor and Indemnitors of all obligations to the Surety under the terms of this Agreement. To the extent Surety accepts collateral other than money, the Surety shall not be liable to any Indemnitors for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral. Such collateral may be held and utilized by Surety: (a) until it has received evidence of its complete discharge from such claim or potential claims; (b) until it has been fully reimbursed for all loss, expenses, attorney's fees and unpaid premiums; and (c) until it has been fully discharged with regard to any liability in connection with any Bond issued by Surety. The Surety's demand shall be sufficient if sent by registered or certified mail to the Contractor and

Indemnitors at the addresses stated herein, or at the address of the Contractor and Indemnitors last known to the Surety, whether or not actually received.

*See* Exhibits A and B at Sixth Paragraph, Deposit.

29.     Finally, the Indemnity Agreements grant Nationwide full and unrestricted access to books, records, and accounts of any and all of the Indemnitors as follows:

## RIGHT TO INFORMATION

TENTH: At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to order credit reports on the Contractor and/or Indemnitors and shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts.

## THE BONDED PROJECTS

30.     In reliance upon the Indemnitors' promises contained in the Indemnity Agreements, Nationwide issued various payment and performance bonds (the "Bonds") on behalf of Indemnitors, for various construction projects (the "Bonded Projects") as follows:

| Bond No. | Type of Bond | Bond Amount | Bond Obligee | Project |
|---|---|---|---|---|
| BD765810 | Payment and Performance | $872,400 | Koman Integrated Solutions, LLC | USDOT, Federal Highways Administration, Eastern Federal Lands High Division, Subcontract #989-1909-001 |
| BD7901034741 | Payment and | $190,803 | Town of Cave | Town of Cave Creek, Arizona, |

| | Performance Bond | | Creek, Arizona | Willow Springs Project |
|---|---|---|---|---|
| BD767507 | Payment and Performance Bond | $853,692.22 | State of Arizona Dept. of Emergency & Military Affairs | 162 Air Wing Paving – PO #: 623-853-6293 – Job #: 195540 – 162nd, 6615 Air Guard Way, Tucson, AZ |
| BD765819 | Payment and Performance Bond | $176,223 | Town of Cave Creek, Arizona | Town of Cave Creek Arizona, Saguaro W. Ph. II Mill & Pave Project |
| BD762512 | Performance and Payment Bond | $1,194,852.65 | City of Colorado Springs, Colorado | City of Colorado Springs, Colorado, RAC Parking Lot Repair |
| BD765808 | Performance and Payment Bond | $516,302 | City of Colorado Springs, Colorado | City of Colorado Springs, Colorado, Van Buren SRTS Pedestrian & Bicycle Improvements |
| BD765817 | Performance and Payments Bond | $250,000 | 2020 Pavement Crack Seal Program | City of Greeley, Colorado, 2020 Pavement Crack Seal Program |
| BD7901035077 | Performance and Payment Bond | $995,397 | El Paso County | El Paso County, Pavement Crack Sealing |
| BD762257 | Performance and Payment Bond | $425,899.10 | El Paso County | El Paso County, Galley Concrete, Hathaway to Peterson |

## PERFORMANCE BOND CLAIMS
## The Buenos Aires Project

31.     On or about November 4, 2020, Koman Integrated Solutions, LLC ("KIS"), the obligee under Performance Bond No. BD765810 (the Koman Performance Bond"), USDOT, Federal Highways Administration, Eastern Federal Lands High Division, Subcontract #989-1909-001 (the "Buenos Aires Project") declared Regional Pavement to be in default under the bonded contract and provided a 48-hour cure notice to Regional Pavement.

32.     Having received no response from Regional Pavement to its November 4, 2020 letter, KIS formally terminated the bonded contract on November 11, 2020 and initiated a claim against the Koman Performance Bond.

33.     Nationwide recently undertook a comprehensive investigation of KIS' claim against the Koman Performance Bond.

34.     By virtue of KIS's claim against the Koman Performance Bond, Nationwide has and continues to incur costs and expenses in the form of consulting and attorneys' fees.

35.     Based upon its investigation, Nationwide reasonably anticipates incurring a loss to complete the Buenos Aires Project.

36. By virtue of the above described performance bond claim, Nationwide has and continues to incur costs and expenses in the form of consulting and attorneys' fees.

## PERFORMANCE BOND CLAIMS
## El Paso County, Pavement Crack Sealing Project

37.     On or about November 24, 2020, El Paso County, Colorado ("El Paso County"), the obligee under Performance Bond No. BD7901035077 (the "Pavement Crack Sealing Performance Bond"), Pavement Crack Sealing Project, Contract No. 20-026 (the "Pavement Crack Sealing Project") declared Avery Asphalt to be in default under the bonded contract and advised Avery Asphalt that El Paso County may terminate the contract effective 12:01AM, Tuesday, December 8, 2020 if Avery Asphalt does not submit a

detailed plan of how it will remove the causes for termination on the Pavement Crack Sealing Project within ten (10) days of receipt of the November 24, 2020 letter.

38.    As of the date of filing this Complaint, Nationwide has not received any communications from Indemnitors concerning the November 24, 2020 notice of default letter received from El Paso County.

39.    Nationwide is in the process of undertaking a comprehensive investigation of El Paso County's claim against the Pavement Crack Sealing Performance Bond.

40.    By virtue of El Paso County's claim against the Pavement Crack Sealing Performance Bond, Nationwide will incur costs and expenses in the form of consulting and attorneys' fees.

41.    Based upon its initial investigation, Nationwide reasonably anticipates incurring a loss on the Pavement Crack Sealing Project.

42.    Nationwide reasonably anticipates performance bond claims under the other performance bonds Nationwide issued on behalf of Indemnitors on the Bonded Projects located in Arizona and Colorado.

## PAYMENT BOND CLAIMS

43.    In addition to the performance bond claim described above, Nationwide has received numerous claims against its payment bonds issued on behalf of Regional Pavement.

44.    As of the date of filing this Complaint, Nationwide has received payment bond claims by the subcontractors and suppliers of Regional Pavement in the following aggregate amounts, not including redundant lower-tier claims, listed on a bond-by-bond basis:

| Bond | Project | Aggregate Claim Amounts |
|---|---|---|
| BD765810 | USDOT, Federal Highways Administration, Eastern Federal Lands High Division, Subcontract #989-1909-001 | $460,680.39 |
| BD134741 | Town of Cave Creek, Arizona, Willow Springs Project | $209,256.43 |
| **Total Amount:** | | **$669,936.82** |

45.     By virtue of the above described payment bond claims, Nationwide has and continues to incur costs and expenses in the form of consulting and attorneys' fees.

46.     Nationwide is in the process of investigating these payment bond claims and no decision has been made as to whether or not they are proper and valid and/or payable. Nationwide reserves all rights to deny one or more of these claims.

47.     Nationwide reasonably anticipates receiving additional payment bond claims resulting in additional losses under the payment bonds Nationwide issued on behalf of Indemnitors on the above-referenced Bonded Projects located in Arizona and Colorado.

## INDEMNITORS' REFUSAL TO HONOR NATIONWIDE'S RIGHT TO INSPECT INDEMNITORS' BOOKS AND RECORDS

48.     Pursuant to the terms of Indemnity Agreements, Nationwide has made written demand on Indemnitors for unrestricted access to the books, records and accounts of Indemnitors, so that Nationwide could more fully evaluate the above described performance and payment bond claims.

49.     Indemnitors have ignored Nationwide's demands and refused and/or failed to provide Nationwide with free access to the books and records of Indemnitors, making it all the more difficult for Nationwide to fully and completely evaluate the above described performance and payment claims and any defenses it may have to those claims.

## THE INDEMNITORS' REFUSAL TO HONOR NATIONWIDE'S COLLATERAL DEMAND

50.     Pursuant to the terms of the Indemnity Agreements, on or about November 9, 2020, Nationwide sent Indemnitors a written demand (the "Collateral Demand"; a true and accurate copy of which is attached hereto as Exhibit "C" and incorporated herein by this reference) requiring that no later than November 14, 2020, Indemnitors place Nationwide in possession of collateral sufficient to discharge and/or exonerate the then existing and potential bond claims.

51.     The Indemnitors have completely ignored Nationwide's Collateral Demand and refused and/or failed to deposit sufficient collateral with Nationwide to discharge the existing claims against the performance and payment bonds.

## REGIONAL PAVEMENT CEASES OPERATIONS AND OTHER INDEMNITORS FILE DISSOLUTIONS

52.     On or about November 4, 2020, Regional Pavement ceased operations and laid off all of its employees.

53.     Concerned about Regional Pavement's sudden closure and in an effort to obtain information about the status of ongoing bonded projects where performance and payment bond claims have been filed by project owners and/or equipment and material suppliers alleging deficient, defective and/or noncompliant work and nonpayment for equipment and materials respectively, Nationwide repeatedly attempted to contacted Aaron Avery, the director, sole shareholder, treasurer, and secretary of Regional Pavement, via telephone and e-mail; however, Regional Pavement failed to respond substantively to Nationwide's communication.

54.     Concerned about the status of ongoing bonded projects undertaken by Avery Asphalt and a recent declaration of default issued by El Paso County under the Pavement Crack Sealing Performance Bond alleging deficient, defective and/or noncompliant work, Nationwide contacted Avery Asphalt via e-mail to obtain its position on the claim, inquire

about its plans to remedy the alleged default, and complete the bonded project; however, Avery Asphalt has not responded to Nationwide's communications.

55.     Nationwide urgently needs access to Indemnitors' books and records in order to investigate the allegations underlying the performance bond and payment bond claims made by project owners and equipment and/or material suppliers.

56.     Without access to Indemnitors' books and records, Nationwide's ability to investigate the performance and payment bond claims and ultimately mitigate its losses under the bonds is seriously impaired, thereby causing irreparable harm to Nationwide.

57.     On October 2, 2020, Aaron Avery and Polly Avery transferred their interest in real property located at 15676 Soo Line Way, Monument, CO ("Soo Line Way Property") by warranty deed to Polly Avery for little or no consideration.  The Soo Line Way Property has an estimated value on Realtor.com of $584,600.

58.     On October 2, 2020, Aaron Avery and Polly Avery transferred their interest in real property located at 18195 E. Forest Drive, Monument, CO ("E. Forest Drive Property") by warranty deed to Polly Avery for little or no consideration.   Upon information and belief, the E. Forest Drive Property has an estimated value of $393,600.

59.     On November 13, 2020, Avery Asphalt Surfacing filed Articles of Dissolution with the Colorado Secretary of State's Office stating an effective date of August 1, 2020.

60.     The delayed effective date of August 1, 2020 confirms that Aaron Avery, as an officer, director, shareholder, manager, member, partner, general partner, agent or otherwise principal of Avery Asphalt Surfacing, knew of the company's financial problems over 3 months ago, yet Indemnitors failed to notify Nationwide of Avery Asphalt Surfacing's or Arron Avery's deteriorating financial conditions at that time.

61.     On November 13, 2020, LBLA filed Articles of Dissolution with the Colorado Secretary of State's Office stating an effective date of November 6, 2020.

62.     At no time prior to November 13, 2020 did LBLA or Indemnitors notify Nationwide of LBLA's deteriorating financial condition.

63.     Nationwide is aware of no less than eight lawsuits filed in 2020 against Regional Pavement and/or Avery Asphalt in the Colorado District Court – El Paso County, and the Superior Court of Arizona – Maricopa County suggesting to Nationwide that Indemnitors' financial condition is deteriorating.

64.     Within the last 30 days, the officers of Regional Pavement offered to sell valuable construction equipment at significantly discounted prices, suggesting that Indemnitors are trying to abscond assets.

65.     Indemnitors' deteriorating financial conditions subjects Nationwide to imminent and ongoing financial harm because Indemnitors are unable to meet their obligations to Nationwide under the Indemnity Agreement.

66.     As of the time of filing this Complaint, there are at least 5 bonded projects in various states of completion.  Given Indemnitors' failure to communicate with Nationwide, it is unknown whether Indemnitors are performing deficient and/or unsatisfactory, non-conforming work, which may Nationwide to damages.  It is unknown whether Indemnitors' alleged failures are causing delays to these bonded project, which may subject Nationwide to liquidated damages and/or other damages.  It is unknown whether Indemnitors are retaining subcontractors or material suppliers without payment, on these 5 bonded projects, thereby subjecting Nationwide to future payment bond claims.

### "DEFAULTS" BY THE INDEMNITORS

67.     Indemnitors have defaulted under the Indemnity Agreements because:

        a.      Regional Pavement has been declared to be in default by the obligee on the Koman Performance Bond;

        b.      Regional Pavement has failed to pay, to the extent due in whole or in part, claims, bills or other indebtedness incurred in connection with the bonded contracts;

c.   Regional Pavement has ceased its operations and has failed to substantively respond to Nationwide's inquiries.

d.   Avery Asphalt has been declared to be in default by the obligee on the Pavement Crack Sealing Performance Bond;

e.   Avery Asphalt Surfacing has dissolved and failed to substantively respond to Nationwide's inquiries;

f.   LBLA has dissolved and failed to substantively respond to Nationwide's inquires;

g.   Indemnitors have failed to provide Nationwide free access to all of their books, records, and accounts; and/or

h.   Indemnitors have failed to comply with the Collateral Demand and the terms of the Indemnity Agreements, which require that they pay to Nationwide an amount sufficient to discharge the current claims made against the performance and payment bonds.

68.   Nationwide anticipates incurring a loss on its performance and payment bonds in an amount substantially greater than $75,000 but, based upon the Indemnitors' failure to provide access to project and accounting books and records and the evolving nature of claims being made on the performance and payment bonds, Nationwide is not able to precisely project what its total loss under the performance and payment bonds will ultimately be.

## <u>COUNT I – BREACH OF CONTRACT</u>

69.   Nationwide incorporates by reference paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.   Pursuant to the terms of the Indemnity Agreements, Indemnitors are contractually and irrevocably required to defend, indemnify and exonerate  Nationwide from all loss, costs and expenses incurred by Nationwide as a result of issuing the performance and payment bonds on behalf of Indemnitors.

71.     Pursuant to the terms of the Indemnity Agreements, Indemnitors are contractually and irrevocably required to deposit with Nationwide an amount sufficient to discharge the claims made against Nationwide on the performance and payment bonds.

72.     Pursuant to the terms of the Indemnity Agreements, Indemnitors are contractually and irrevocably required to provide Nationwide with free access to their books, records and accounts.

73.     Whereas Indemnitors have failed to defend, indemnify and exonerate Nationwide, deposit sufficient collateral with Nationwide to discharge the bond claims, or provide Nationwide with access to their books, records and accounts, therefore, Indemnitors are in material breach of their obligation under the Indemnity Agreements.

74.     Nationwide has retained undersigned attorneys and will continue to incur costs and fees in pursuit of its rightful interest in this matter and is entitled to recover its attorneys' fees and costs pursuant to the terms of the Indemnity Agreements and pursuant to Colorado statutes.

## COUNT II – INDEMNITY

75.     Nationwide incorporates by reference paragraphs 1 through 74 of this Complaint as though fully set forth herein.

76.     As a result of the aforementioned bond claims, Nationwide has incurred losses, costs and expenses in connection with the performance and payment bonds.

77.     Additionally, based upon the default of Indemnitors on the above described bonded projects and the outstanding payment and performance bond claims, Nationwide reasonably anticipates additional losses as a result of having issued the performance and payment bonds and in an amount ultimately to be determined at trial.

78.     By virtue of having executed the Indemnity Agreements, Indemnitors, and each of them, are contractually bound to defend, indemnify, and exonerate Nationwide against all loss, costs and expenses incurred by Nationwide by reason of having executed the performance and payment bonds.

79.    Nationwide has retained undersigned attorneys and will incur additional expenses in pursuit of its rightful interest in this matter and is, therefore, entitled to full compensation for same pursuant to the Indemnity Agreements.

80.    Alternatively, Nationwide is entitled to recover its reasonable attorneys' fees and costs pursuant to the terms of the Indemnity Agreements and pursuant to Colorado statutes.

## COUNT III – EXONERATION AND *QUIA TIMIT*

81.    Nationwide incorporates by reference paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82.    Under the terms of the Indemnity Agreements, Indemnitors promised to pay Nationwide an amount sufficient to discharge any claim made against Nationwide on the performance and payment bonds, and agreed that failure to do so would constitute a "Default" under the Indemnity Agreements, giving Nationwide the right to injunctive relief for specific performance.

83.    Nationwide has received performance and payment bond claims against the Bonds and reasonably anticipates losses as follows:

a.    Presently existing Payment Bond Claims totaling $669,936.82, which Nationwide is in the process of reviewing and investigating;

b.    Anticipated losses on the Koman Performance Bond of at least $872,400, which Nationwide is in the process of reviewing and investigating;

c.    Anticipated losses on the El Paso County Pavement Crack Sealing Performance Bond in an unliquidated amount and to be provided at the time of trial; and

d.    Potential losses under some/all of the other outstanding performance and payment bonds issued on projects located in Arizona and Colorado in an unliquidated amount and to be provided at the time of trial.

84.    As set forth above Nationwide, as surety, has incurred and anticipates that it may sustain additional loss under the performance and payment bonds executed on behalf of Indemnitors that are subject to the Indemnity Agreements.

85.    Notwithstanding demand by Nationwide, Indemnitors have failed to pay to or collateralize Nationwide for its present losses in connection with the aforementioned bond claims.

86.    Additionally, based upon the default of Regional Pavement on the above described bonded projects, Nationwide reasonably anticipates additional losses as a result of having issued the performance and payment bonds and in an amount ultimately to be determined at trial.

87.    Upon information and belief, Indemnitors' assets are insufficient to adequately secure Nationwide for its obligation under the performance bonds.

88.    Unless the assets of Indemnitors are set aside in favor of Nationwide as collateral security, Nationwide will not be adequately secured for its obligations under the performance and payment bonds.

89.    In light of the substantial bond claims relative to the size of the bonded contracts, the refusal of Indemnitors to provide Nationwide access to its books and records, the fact that there are outstanding bonds with ongoing work in Colorado at an unknown stage of completion, and the Indemnitors ignoring Nationwide's Collateral Demand, Nationwide fears that the Indemnitors will not have funds available with which to indemnify or reimburse Nationwide for liability asserted against it, or losses incurred by it, in its capacity as surety on the performance and payment bonds.  Nationwide seeks *quia timet* relief from this Court to:

a.        Bar the Indemnitors from selling, encumbering, wasting, or otherwise disposing of any and all of their assets until such time as Nationwide's potential and actual losses under the performance and payment bonds have been determined and the

Indemnitors have fully indemnified and reimbursed Nationwide for all losses sustained by issuance of the performance and payment bonds; and

b.      Order the Indemnitors to take such further and other actions as are necessary to protect Nationwide's rights to indemnification and reimbursement for losses it has, or may sustain, due to issuance of the performance and payment bonds.

90.    In order to adequately secure Nationwide for its obligations under the performance and payment bonds, Nationwide is entitled to this Court's Order temporarily, preliminarily and permanently granting Nationwide liens against the Indemnitors' assets to provide sufficient collateral to Nationwide to cover Nationwide's losses and anticipated losses, fees, expenses and accrued and accruing interest incurred in connection with the performance and payment bonds.

91.    Nationwide is without a plain, speedy or adequate remedy at law, and will be irreparably and permanently injured unless this Court grants the injunctive and equitable relief as prayed for herein.

## COUNT IV – SPECIFIC PERFORMANCE – SECURITY

92.    Nationwide incorporates by reference paragraphs 1 through 91 of this Complaint as though fully set forth herein.

93.    By the express terms of the Indemnity Agreements, Indemnitors committed to pay to Nationwide an amount sufficient to discharge any claim made against Nationwide on the performance and payment bonds, and agreed that failure to do so would constitute a "Default" under the Indemnity Agreements, giving Nationwide the right to injunctive relief for specific performance.

94.    As set forth above, the Indemnitors have failed and refused to provide the collateral requested and have failed to pay Nationwide for its present and reasonably anticipated future losses in connection with the aforementioned bond claims.

95.    Nationwide lacks an adequate legal remedy against the Indemnitors because the only manner in which Nationwide can receive what it bargained for relating to making

payment to and providing collateral to Nationwide is by the Court issuing an order of specific performance relating thereto.

96.     The Indemnitors should be ordered to specifically perform the obligations under the Indemnity Agreements to post sufficient collateral and make payment to Nationwide to satisfy the potential and actual losses, liability and expenses resulting from Nationwide issuing the performance and payment bonds.

**COUNT V – SPECIFIC PERFORMANCE – BOOK AND RECORDS**

97.     Nationwide incorporates by reference paragraphs 1 through 96 of this Complaint as though fully set forth herein.

98.     As set forth above in the Indemnity Agreements, the Indemnitors agreed to provide access to project and accounting books and records to Nationwide at any time until Nationwide is furnished competent evidence of its discharge, without loss, from its performance and payment bonds.

99.     Moreover, the Indemnity Agreements provide that upon the event of Default, Nationwide has the right to take immediate possession of "the supplies, tools, plant, equipment, and materials and to use and consume if necessary, the same in the performance of the contracts itself under the circumstances."

100.     As set forth above, the Indemnitors have, without any reasonable basis, failed and refused to provide access to project and financial books and records.

101.     Nationwide lacks an adequate legal remedy against Indemnitors because the only manner in which Nationwide can receive what it bargained for (i.e. complete access to all project and financial books and records) is by the Court issuing an order of specific performance relating thereto.

102.     Indemnitors should be ordered to specifically perform the obligations under the Indemnity Agreements to give Nationwide "reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby

authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts."

## PRAYER FOR RELIEF

WHEREFORE, Nationwide prays for judgment and equitable relief against Indemnitors, joint and severally, as follows:

A.     For a monetary judgment in the amount to be determined at trial for losses, costs and expenses incurred by Nationwide which are subject to the terms of the Indemnity Agreements.

B.     For an award of Nationwide's attorneys' fees and costs pursuant to the terms of the Indemnity Agreements or, in the alternative, pursuant to Colorado statutes.

C.     For an award of all expenses and costs incurred by Nationwide in adjusting and defending claims that have been made, or may be made, by persons or entities under the Bonds and in bringing this action;

D.     For pre-judgment and post-judgment interest on the foregoing amounts at the highest legal rate from the date Nationwide expended funds;

E.     For an order declaring that Nationwide is entitled to collateral and payment in an amount sufficient to pay for Nationwide's actual and anticipated bond losses, attorneys' fees and expenses, together with interest at the highest applicable rate from the date Nationwide expended funds until paid in full;

F.     Ordering the Indemnitors to exonerate, indemnify and hold Nationwide harmless from any and all liability and losses for claims that have been made, or may be made, by persons or entities under the performance and payment bonds;

G.     Granting *quia timet* relief, via temporary, preliminary and permanent injunctive orders ordering the Indemnitors to specifically perform their obligations to indemnify and exonerate Nationwide from and against any and all liability for potential

claims and actual losses arising from Nationwide issuing the performance and payment bonds as follows:

1.      Requiring the Indemnitors to post collateral or security with Nationwide in an amount sufficient to cover all potential and actual losses Nationwide may sustain or has sustained by virtue of issuing the performance and payment bonds;

2.      Ordering temporarily, preliminarily and permanently granting a lien against all the assets and property of the Indemnitors, including realty, personal and mixed, and property in which they have an interest, with said lien to secure Nationwide against  its present and anticipated losses incurred by virtue of having issued the performance and payment bonds on behalf of Indemnitors and to remain in effect unless and until Nationwide shall be placed in funds as prayed for in paragraph "G(1)" directly above;

3.      Enjoining and restraining the Indemnitors from selling, transferring, wasting, encumbering or otherwise disposing of such assets unless and until such time as Nationwide's potential and actual losses under the performance and payment bonds have been determined, Nationwide receives sufficient cash collateral (or other form of collateral acceptable to Nationwide) to cover Nationwide's potential and actual losses, fees, expenses, and accrued and accruing interest incurred in connection with the performance and payment bonds, and the Indemnitors have fully indemnified and reimbursed Nationwide for all losses sustained by virtue of issuing the performance and payment bonds; and

4.      Ordering the Indemnitors to take such further and other actions necessary to protect Nationwide's rights to indemnification and reimbursement for losses it has, or may sustain, by virtue of issuing the performance and payment bonds;

H.      For an order specifically enforcing Indemnitors' obligation to pay to Nationwide an amount sufficient to discharge claims against Nationwide on the performance and payment bonds;

I.       Ordering Indemnitors to immediately (1) give Nationwide "reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts;" (2) give Nationwide immediate possession of "the supplies, tools, plan, equipment, and materials and to use and consume if necessary, the same in the performance of the contracts itself under the circumstances;" and (3) ensure that the books, records, and accounts are provided in both paper and electronic form;

J.       For such other and further relief as the Court deems just and proper; and

K.       Nationwide reserves the right to seek additional remedies that may be needed to protect it in the event of future losses as provided for under the Indemnity Agreement.

Dated this 18th day of December, 2020.

By:  s/ Patrice F. Welch
      Patrick F. Welch
      Jennings Strouss & Salmon, PLC
      One East Washington, Suite 1900
      Phoenix, Arizona 85004-2554
      Telephone Number:  602-262-5847
      E-mail:  Pwelch@jsslaw.com
      Attorneys for Plaintiff Nationwide Mutual
      Insurance Company

## **VERIFICATION**

State of Pennsylvania                                                )
                                                               ) SS
County of ___Montgomery_____ )

MICHAEL E. CARSON, being duly sworn upon her oath, deposes and says as follows:

1.      I am Director - Surety Claims at Nationwide Mutual Insurance Company ("Nationwide") and am authorized to make this Verification of behalf of Nationwide.

2.      I have read the foregoing *Verified Complaint* (the "Complaint").  Based upon my own knowledge and my review of business records kept by Nationwide in the regular course of business, I know that the allegations contained in the Complaint are true and accurate, except for those allegations contained therein upon information and belief, and as to those, I believe them to be true.

DATED this ___18TH___ day of December, 2020.

_____
MICHAEL E. CARSON
Director - Surety Claims
Nationwide Mutual Insurance Company

# EXHIBIT A

MK 9-7-17



**Nationwide**
is on your side

**Continuing Agreement of Indemnity**
**Contractor's Form**

Bond Department
Nationwide Mutual Insurance Company
AMCO Insurance Company
Allied Property and Casualty Insurance Company
Farmland Mutual Fire Insurance Company
Nationwide Agribusiness Insurance Company
1100 Locust St. Department 2006
Des Moines, IA 50391-2006

THIS AGREEMENT of Indemnity, made and entered into this 25th day of August, 2017,
by Regional Pavement Maintenance of Arizona, Inc.
2435 S. 6th Ave., Phoenix, AZ 85003 (hereinafter called the Contractor) and
Avery Holdings, LLC; Avery Equipment, LLC; Avery Asphalt Surfacing and Systems, Inc; Avery Asphalt, Inc.,

and any one of or a combination of NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, AMCO INSURANCE COMPANY, ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, FARMLAND MUTUAL INSURANCE COMPANY, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, DES MOINES, IOWA, (hereinafter referred to individually or collectively as "Surety").

**WITNESSETH:**

WHEREAS, the Contractor in the performance of contracts and the fulfillment of its obligations, whether in its own name solely or jointly with others, may desire or be required to give or procure certain surety bonds, undertakings, or instruments of guarantee, and to renew, continue, or substitute the same from time to time, or to give or procure new bonds, undertakings or instruments of guarantee with the same or different penalties and/or conditions in renewal, continuation, extension or substitution thereof (any one or more of which are hereinafter called "Bond" or "Bonds") or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express condition that this Continuing Agreement of Indemnity Contractor's Form (the "Agreement") should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the foregoing premises and of the covenants set forth herein, the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

**PREMIUMS**

FIRST: The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

**INDEMNITY**

SECOND: The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and attorney fees and expenses) which the Surety may sustain and incur:

(a)     by reason of having executed or procured the execution of the Bonds,

(b)     by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or

(c)     in enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment to the Surety by the Indemnitors shall be in an amount as determined by the Surety.

In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

The Surety shall have the right to adjust, settle, or compromise any claim demand, suit, or judgment upon the Bonds, and any such payment or compromise shall be binding upon the Contractor and Indemnitors and be included as a liability, loss, or expense covered by this Indemnity.

If the Contractor and the Indemnitors request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, the Contractor and Indemnitors shall (a) give notice to the Surety to this effect, and (b) simultaneously deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered, or that may be rendered, with interest, costs, expenses, and attorneys' fees and expenses, including those of Surety.

**JOINT AND SEVERAL**

THIRD: The obligations of the Contractor and Indemnitors shall be joint and several. In addition, this Agreement shall be binding on the Contractor, Indemnitors, and their respective heirs, executors, administrators, successors, and assigns; and the same shall inure to the benefit of Surety, its successors and assigns.

**ASSIGNMENT**

FOURTH: With respect to each Bond executed by the Surety, the Contractor, with the Indemnitors hereby consenting, hereby assigns, transfers, conveys, and sets over to the Surety as collateral to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety:

(a)     any and all monies due or to become due to the Contractor under or as a result of the contract covered by the Bond and all other contracts whether bonded or not in which the Contractor has an interest, including but not limited to progress payments, deferred payments, retained percentages, compensation for extra work, and proceeds of damage claims;

(b)     all rights, title, and interest of the Contractor in and to all supplies, tools, plant, equipment, and materials of every nature and description that may now or hereafter be in, on or around the site of, or the work under, the contract covered by the Bond, and materials purchased or ordered for the performance of said contract whether in process of construction, in transit to the site, or in storage elsewhere;

(c)     all rights, title, and interest of the Contractor in and to all subcontracts, let or to be let, in connection with said contract covered by the Bond and in and to all surety bonds covering such subcontracts;

(d)     all actions, causes of actions, claims, and demands whatsoever with the Contractor's subcontractors, laborers, materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of the contract covered by the Bond, and against any surety or sureties of any such subcontractors, laborers, or materialmen; and

(e)     any and all rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in or growing in any manner out of the Bonds.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date, although nothing herein shall limit the right of the Surety to claim under any prior assignment. With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond. The assignment with respect to each Bond shall take effect on the date indicated, but only in the event of one or more of the following (hereinafter called "Events of Default"):

(a)     any abandonment, forfeiture, or breach of or failure, refusal, or inability to perform any contract covered by a Bond or any Bond liability or any breach of any said Bonds;

(b)     the failure, delay, refusal, or inability of the Contractor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(c)     the failure to perform, or comply with, any of the terms, covenants, and obligations of this Agreement;

(d)     the failure to pay and discharge, when due, any other indebtedness of the Contractor to the Surety;

(e)     any assignment by the Contractor for the benefit of creditors; or the appointment or an application for the appointment of a receiver or trustee for the Contractor or its property, whether insolvent or not; or an application by the Contractor for reorganization or arrangement under the terms of the federal bankruptcy laws or any similar laws of any state, possession, or territory of the United States;

(f)     the commencement or continuation of any proceeding which deprives the Contractor of, or interferes with, its use of any of the supplies, tools, plant, machinery, equipment, or materials in, on or around the site of, or the work under the contract covered by any said Bond;

(g)     the Contractor is an individual, the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony or imprisoned, and if the Contractor is any other type of entity, any change or threat of change in the character, identity, control, management, beneficial ownership, or existence of the Contractor.

The foregoing assignment is for the purpose of (a) enabling the Surety to complete the performance of the obligations of the Contractor under the contract covered by a Bond and the payment of obligations incurred by the Contractor in the performance of such contract and (b) providing the Surety with collateral security for the obligations of the Contractor and Indemnitors to the Surety under this Agreement.

Upon the happening of an Event of Default, the Contractor authorizes and empowers the Surety, or any person or persons designated by the Surety, to execute in the name of the Contractor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property, and rights as are hereby assigned, transferred, or conveyed, and the Contractor hereby authorizes the Surety or such person or persons designated by the Surety to take immediate possession of such funds, property, and rights, to collect such sums as may be due and to endorse, in the name of the Contractor, and to collect, any checks, drafts, warrants, and other instruments made and issued in payment of any such funds.

Upon the happening of an Event of Default, the Surety shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use, and consume if necessary, the same in the performance of the contracts by itself or by others.

The Surety is authorized to assert and prosecute any right or claim hereby assigned, transferred, or conveyed in the name of the Contractor and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances.

The Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind. The Surety may purchase any of the property at such sale.

This Agreement constitutes a Security Agreement to the Surety and a Financing Statement in accordance with the provisions of the Uniform Commercial Code. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under such Code, and the Contractor and Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties, and other places as the Surety shall deem necessary or desirable.

## COMPLETION OF WORK

**FIFTH:** Upon the happening of an Event of Default described in the FOURTH section hereof, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors, to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses and expenses so incurred.

## DEPOSIT

**SIXTH:** In order to exonerate or indemnify the Surety from actual or anticipated loss, the Contractor and Indemnitors, jointly and severally, shall, upon demand of the Surety, deposit with the Surety an amount, as determined by the Surety, as collateral security to the Surety before the Surety makes any payments. Such deposit shall be, at Surety's option, money, property, or liens or security interests in property. The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement whether or not the Surety has: (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. The Surety shall have no obligation to invest, or to provide a return on the deposit. The Contractor and Indemnitors shall be entitled to the return of any unused portion of the deposit upon termination of the liability of the Surety on the Bonds and the performance by the Contractor and Indemnitors of all obligations to the Surety under the terms of this Agreement. To the extent Surety accepts collateral other than money, the Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral. Such collateral may be held or utilized by Surety; (a) until it has received evidence of its complete discharge from such claim or potential claims, (b) until it has been fully reimbursed for all loss, expenses, attorney's fees and unpaid premiums, and (c) until it has been fully discharged with regard to any liability in connection with any Bond issued by Surety. The Surety's demand shall be sufficient if sent by registered or certified mail to the Contractor and Indemnitors at the addresses stated herein, or at the addressed of the Contractor and Indemnitors last known to the Surety, whether or not actually received.

## TRUST FUND

**SEVENTH:** The Contractor and Indemnitors covenant and agree that all payments received for or on account of any contract covered by a Bond shall be held as a trust fund in which the Surety has an interest for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## CONSENT TO CHANGES

**EIGHTH:** The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in any Bond, and/or contract covered by a Bond, including, but not limited to, any change in the time for the completion of the contract and for payments or advances thereunder, to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes, or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or different conditions, provisions, and obligee and with the same or larger or smaller penalties, and it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or may substantially increase the liability of said Indemnitors.

## LOANS

**NINTH:** The Surety may from time to time make or guarantee advances or loans to or for the account of the Contractor to be used in the performance of obligations of the Contractor under any contracts referred to in or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## RIGHT TO INFORMATION

**TENTH:** At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to order credit reports on the Contractor and/or Indemnitors and shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts.

## DECLINATION OF SURETYSHIP

**ELEVENTH:** The Surety may decline, in its sole discretion, to execute any Bond applied for without incurring any liability whatsoever to the Contractor and Indemnitors, and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement. If the Surety shall execute a bid or proposal bond, or any similar undertaking, it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal bond.

## WAIVER OF NOTICE

**TWELFTH:** The Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under any Bond, as well as notice of any and all liability of the Surety or any co-sureties under any Bond, to the end and effect that, the Contractor and the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## WAIVER OF HOMESTEAD RIGHT

**THIRTEENTH:** The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale, or other legal process under the laws of any state, territory or possession.

## NOTICE OF CLAIMS

**FOURTEENTH:** If the Contractor or Indemnitors become aware of any demand, notice, or proceeding which may result in liability to the Surety under any bond, the Contractor or Indemnitors shall notify the Surety immediately thereof in writing.

## PROTECTION OF OTHER SURETIES

**FIFTEENTH:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties, and reinsuring sureties, as their interest may appear, and they shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder.

## SEPARATE ACTIONS AND SETTLEMENTS

**SIXTEENTH:** Separate suits may be brought against any or all of the parties hereto as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the parties hereto, and such settlement or compromise shall not affect the liability of any of the rest of the parties hereto.

## SURETYSHIP COVERED

**SEVENTEENTH:** This Agreement applies to all Bonds executed or procured by the Surety for the Contractor, in the Contractor's own name or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, until this Agreement is terminated in accordance with its terms.

## SUBORDINATION OF INDEMNITORS

**EIGHTEENTH:** The Indemnitors shall have no rights of indemnity against the Contractor or its property until the Contractor's obligations to the Surety under this Agreement have been satisfied in full.

## NATURE OF RIGHTS

**NINETEENTH:** All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against the Contractor or any one or more of the Indemnitors shall not release or waive any rights against the Contractor or any one or more of the Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Contractor or to await receipt of any dividends from the legal representatives of the Contractor before asserting its rights under this Agreement against the Indemnitors.

The rights, powers, and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor or Indemnitors whether by the terms of any other agreement, by operation of law, or otherwise. The Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTIETH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect, or invalidity had not existed.

If any of the provisions of this Agreement shall be held by a court of competent jurisdiction to be invalid, it is agreed that such invalidity or illegality should not invalidate the whole Agreement, but as to such jurisdiction this Agreement shall be construed as if it did not contain the provision or provisions held to be invalid or illegal in that particular jurisdiction, but only insofar as such construction does not affect the substance of this Agreement, and the rights and obligations of the parties hereto shall be construed and enforced accordingly in that jurisdiction.

## ATTORNEY-IN-FACT

**TWENTY-FIRST:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint, and designate the Surety or any person or persons designated by the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred, and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary or desirable by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## SERVICE OF PROCESS AGENTS

**TWENTY-SECOND:** If any proceeding is brought against the Surety in which the Surety desires to join the Contractor or Indemnitors by reason of the undertakings in this Agreement, the Contractor and Indemnitors agree that it will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the Contractor or Indemnitors. If the Contractor or Indemnitors fail upon such notice from the Surety to appear, the Contractor or Indemnitors hereby designate the Secretary of the State of territory in which such proceedings are pending as its agent for the service of process in any such proceedings. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which any one of the Contractor or Indemnitors reside, are domiciled, are doing business, or are found, the Contractor or Indemnitors not in the jurisdiction hereby designate the Contractor or Indemnitor in such jurisdiction as its agent to receive on its behalf service of process in such action.

### TERMINATION AND MODIFICATION

**TWENTY-THIRD:** This is a continuing Agreement which remains in full force and effect until terminated. This Agreement may be terminated by the Contractor or Indemnitors upon thirty (30) days written notice sent by registered or certified mail to the Surety at its home office at 1100 Locust Street, Des Moines, IA 50391-2006 but any such notice of termination shall not operate to modify, bar, discharge, limit, affect, or impair the obligations of the Contractor or the Indemnitors with respect to Bonds executed prior to the date of such termination or with respect to Bonds executed after the date of such termination (a) upon the award of a contract to the Contractor, or a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (b) which the Surety has become obligated, prior to such date, to execute, or (c) any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such effective date, and renewals, substitutions and extensions thereof. Furthermore, such notice or termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by writing and executed by an officer of the Surety to form a part hereof.

### DISCHARGE FROM SURETYSHIP

**TWENTY-FOURTH:** The Contractor and Indemnitors will, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof and will furnish the Surety with satisfactory and conclusive evidence that there is no further liability under any Bond. The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond. Upon such discharge or release, the Surety shall return to the Contractor any portion of any premium paid which is unearned as a result of such discharge or release.

### EFFECTIVE DATE

**TWENTY-FIFTH:** This agreement shall be deemed effective as of the date indicated on the first page even though it may actually be signed subsequent to this date.

### REPRESENTATIONS

**TWENTY-SIXTH:** THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATION SET FORTH HEREIN.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

Regional Pavement Maintenance of Arizona, Inc.
(Full Name of Contractor)

Attest _____

By _____
Aaron Avery, President

Avery Holdings, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Equipment, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Asphalt Surfacing and Systems, Inc.

Attest _____

By _____
Aaron Avery, President

Avery Asphalt, Inc.

Attest _____

By _____
Irving Avery, President

### CORPORATE ACKNOWLEDGMENT

STATE OF __CO__

COUNTY OF __EL PaSo__          ss.:

On this __25__ day of __August__, in the year __2017__, before me personally come(s) __Aaron Avery__ to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of __Colorado Springs, CO__ that he/she is the __President__ of __Regional Pavement Maintenance of Arizona, Inc.__ the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires: 5/9/20

**CORPORATE ACKNOWLEDGMENT**

STATE OF _CO_

COUNTY OF _EL Paso_                          ss.:

On this _25_ day of _August_, in the year _2017_, before me personally comes(s) <u>Aaron Avery</u> to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of <u>Colorado Springs, CO</u> that he/she is the <u>President</u> of <u>Avery Asphalt Surfacing and Systems, Inc.</u> the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____

(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires 5/9/20

**CORPORATE ACKNOWLEDGMENT**

STATE OF _CO_

COUNTY OF _EL Paso_                          ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) <u>Irving Avery</u> to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of <u>Colorado Springs, CO</u> that he/she is the <u>President</u> of <u>Avery Asphalt, Inc.</u> the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation and that he/she signed his/her name thereto by like order.

NOTARY: _____

(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires: 5/9/20

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF _CO_

COUNTY OF _EL Paso_                          ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) <u>Earlena M. Avery</u>, Managing Member of the Limited Liability Company of <u>Avery Holdings, LLC</u> to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____

(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires: 5/9/20

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF _CO_

COUNTY OF _EL Paso_                          ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) <u>Earlena M. Avery</u>, Managing Member of the Limited Liability Company of <u>Avery Equipment, LLC</u> to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____

(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires: 5/9/20

**TRUST ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____                          ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, Trustee of the _____ to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Trust.

NOTARY: _____

(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

BDJ 44(04-14)00


**Nationwide®**
is on your side

RMRO Bond Office, 9380 Station Street
Ste. 100, Lone Tree, CO  80124
(800)233-0394 ext. 8893326
FAX (877) 277-4690

Acknowledgement of Receipt
Of Indemnity Agreement

September 12, 2017

Regional Pavement Maintenance of Arizona, Inc.
2435 S. 6th Ave.
Phoenix, AZ  85003

Dear Mr. Avery:

This is to acknowledge receipt of an indemnity agreement dated <u>August 25, 2017</u> for NATIONWIDE MUTUAL INSURANCE COMPANY, AMCO INSURANCE COMPANY, and/or ALLIED PROPERTY & CASUALTY INSURANCE COMPANY for losses which might be sustained by reason of executing surety bonds wherein <u>Regional Pavement Maintenance of Arizona, Inc.</u> is principal.  A copy of the agreement is enclosed herein for your records.  Please review the agreement carefully.

This agreement is continuous in nature and may be terminated only by the provision contained in the agreement.

Sincerely,

Anita R. Calderon, Commercial Service Rep. III
(Contract Surety) – Rocky Mountain Region
Surety & Fidelity/Management Liability and Specialty

Enclosure

 **Nationwide**

# AMENDMENT NO. ___1___ TO THE GENERAL AGREEMENT OF INDEMNITY

**This Amendment shall be attached to and form a part of the General Agreement of Indemnity for** Regional Pavement Maintenance of Arizona, Inc. _____**made and entered into by and in favor of the Surety, dated** August 25, 2017 **and as may have been amended from time to time (hereinafter the "Agreement"). It is hereby agreed that:**

I.    All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

II.   This Amendment shall take effect and form a part of the Agreement immediately upon execution.

III.  The following individual(s) and/or business entities shall be added to the Agreement as an Indemnitor(s) and shall be bound by all the Agreements terms relative to Bonds issued pursuant to the Agreement, whether such Bonds were issued before or after the:

    A.  Execution of this Amendment; or

    B.  Date of the Agreement.

| List of Indemnitor(s) |
|---|
| LBLA Ventures, Inc. |
|  |
|  |
|  |
|  |
|  |

(Space Left Intentionally Blank)

All other terms, conditions and exclusions of the General Agreement of Indemnity remain unchanged.

IN WITNESS WHEREOF, we have signed and sealed this Amendment on this 16th day of April, 2019

By_____/____

(Name and Title of the Officer of the Surety)

**All Signatories Initial Here**

Page 2 of 5 Amendment No. 1 to the General Agreement of Indemnity dated August 25, 2017

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

ATTEST/WITNESS: _____

Business Indemnitor:

LBLA Ventures, Inc. _____

_____ (SEAL)

By: _____

Aaron Avery, President
(Name and Title)

Tax ID No.: 83-2055295

Business Address: _____

7770 Venture Street

Colorado Springs, CO 80951

**BUSINESS ACKNOWLEDGEMENT**

```
MAGGIE ANDREWS
NOTARY PUBLIC - STATE OF COLORADO
NOTARY ID 20154020411
MY COMMISSION EXPIRES MAY 22, 2023
```

State of Colorado

County of El Paso

On this 18th day of April , 20 19 , personally came before me, Aaron Avery who is
the President of LBLA Ventures, Inc.
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)
Notary Public

My Commission Expires: May 22nd, 2023

ATTEST/WITNESS: _____

Business Indemnitor:

_____

_____ (SEAL)

By: _____

_____
(Name and Title)

Tax ID No.: _____

Business Address: _____

_____

_____

**BUSINESS ACKNOWLEDGEMENT**

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is
the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)
Notary Public

My Commission Expires: _____

SNP-G-6 (8-18)

Page 3 of 5 Amendment No. 1 to the General Agreement of Indemnity dated <u>August 25, 2017</u>

WITNESS:                                      Individual Indemnitor:

_____

                                        Signature:_____

                                        Printed Name: _____

                                        Social Security No.: _____

                                        Home Address:   _____

                                                      _____

WITNESS:                                        Individual Indemnitor:

_____

                                        Signature:_____

                                        Printed Name: _____

                                        Social Security No.: _____

                                        Home Address:   _____

                                                      _____

### INDIVIDUAL ACKNOWLEDGMENT(S)

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)                                        _____

                                            Notary Public
                                          My Commission Expires:_____

WITNESS:                                        Individual Indemnitor:

_____

                                        Signature:_____

                                        Printed Name: _____

                                        Social Security No.: _____

                                        Home Address:   _____

WITNESS:                                        Individual Indemnitor:

_____

                                        Signature:_____

                                        Printed Name: _____

                                        Social Security No.: _____

                                        Home Address:   _____

### INDIVIDUAL ACKNOWLEDGMENT(S)

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)                                        _____

                                            Notary Public
                                          My Commission Expires:_____

SNP-G-6 (8-18)

Page 4 of 5 Amendment No. 1 to the General Agreement of Indemnity dated August 25, 2017

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

**ATTEST/WITNESS:**                                    **Limited Partnership  Indemnitor:**

_____          _____

                                                                              _____

                                                                                                                       (SEAL)

                                                           By: _____

                                                           _____
                                                           (Name and Title)

Tax ID No.: _____          Business Address: _____

                                                           _____

                                                           _____

**LIMITED PARTNERSHIP ACKNOWLEDGEMENT**

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                           _____ (SEAL)
                                                           Notary Public

                                                           My Commission Expires: _____

**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____          _____

                                                                              _____

                                                                                                                       (SEAL)

                                                           By: _____

                                                           _____
                                                           (Name and Title)

Tax ID No.: _____          Trust/Trustee Address: _____

                                                           _____

                                                           _____

**TRUST ACKNOWLEDGEMENT**

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                           _____ (SEAL)
                                                           Notary Public

                                                           My Commission Expires: _____

SNP-G-6 (8-18)

Page 5 of 5 Amendment No. 1 to the General Agreement of Indemnity dated <u>August 25, 2017</u>

**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____          _____

                                                       _____
                                                                                              (SEAL)

                                                       By: _____

                                                       _____
                                                       (Name and Title)

Tax ID No.: _____          Trust/Trustee Address: _____

                                                       _____

                                                       _____


### TRUST ACKNOWLEDGEMENT

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                       _____ (SEAL)
                                                       Notary Public

                                                       My Commission Expires: _____


**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____          _____

                                                       _____
                                                                                              (SEAL)

                                                       By: _____

                                                       _____
                                                       (Name and Title)

Tax ID No.: _____          Trust/Trustee Address: _____

                                                       _____

                                                       _____


### TRUST ACKNOWLEDGEMENT

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                       _____ (SEAL)
                                                       Notary Public

                                                       My Commission Expires: _____

# EXHIBIT B

MK 9-7-17

 **Nationwide**®
is on your side

**Continuing Agreement of Indemnity**
**Contractor's Form**

Bond Department
Nationwide Mutual Insurance Company
AMCO Insurance Company
Allied Property and Casualty Insurance Company
Farmland Mutual Insurance Company
Nationwide Agribusiness Insurance Company
1100 Locust St.  Department 2006
Des Moines, IA 50391-2006

THIS AGREEMENT of Indemnity, made and entered into this 25th day of August, 2017,
by Avery Asphalt, Inc.
7770 Venture Street, Colorado Springs, CO  80915   (hereinafter called the Contractor) and
Avery Holdings, LLC; Avery Equipment, LLC; Avery Asphalt Surfacing and Systems, Inc; Regional Pavement Maintenance of Arizona, Inc.,

and any one of or a combination of NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, AMCO INSURANCE COMPANY, ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, FARMLAND MUTUAL INSURANCE COMPANY, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, DES MOINES, IOWA, (hereinafter referred to individually or collectively as "Surety").

**WITNESSETH:**

WHEREAS, the Contractor in the performance of contracts and the fulfillment of its obligations, whether in its own name solely or jointly with others, may desire or be required to give or procure certain surety bonds, undertakings, or instruments of guarantee, and to renew, continue, or substitute the same from time to time, or to give or procure new bonds, undertakings or instruments of guarantee with the same or different penalties and/or conditions in renewal, continuation, extension or substitution thereof (any one or more of which are hereinafter called "Bond" or "Bonds") or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express condition that this Continuing Agreement of Indemnity Contractor's Form (the "Agreement") should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the foregoing premises and of the covenants set forth herein, the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

**PREMIUMS**

FIRST:  The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

**INDEMNITY**

SECOND:  The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and attorney fees and expenses) which the Surety may sustain and incur:

(a)      by reason of having executed or procured the execution of the Bonds,

(b)      by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or

(c)      in enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment to the Surety by the Indemnitors shall be in an amount as determined by the Surety.

In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

The Surety shall have the right to adjust, settle, or compromise any claim demand, suit, or judgment upon the Bonds, and any such payment or compromise shall be binding upon the Contractor and Indemnitors and be included as a liability, loss, or expense covered by this Indemnity.

If the Contractor and the Indemnitors request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, the Contractor and Indemnitors shall (a) give notice to the Surety to this effect, and (b) simultaneously deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered, or that may be rendered, with interest, costs, expenses, and attorneys' fees and expenses, including those of Surety.

BDJ 44(04-14)00

### JOINT AND SEVERAL

THIRD:  The obligations of the Contractor and Indemnitors shall be joint and several.  In addition, this Agreement shall be binding on the Contractor, Indemnitors, and their respective heirs, executors, administrators, successors, and assigns; and the same shall inure to the benefit of Surety, its successors and assigns.

### ASSIGNMENT

FOURTH:  With respect to each Bond executed by the Surety, the Contractor, with the Indemnitors hereby consenting, hereby assigns, transfers, conveys, and sets over to the Surety as collateral to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety:

(a)     any and all monies due or to become due to the Contractor under or as a result of the contract covered by the Bond and all other contracts whether bonded or not in which the Contractor has an interest, including but not limited to progress payments, deferred payments, retained percentages, compensation for extra work, and proceeds of damage claims;

(b)     all rights, title, and interest of the Contractor in and to all supplies, tools, plant, equipment, and materials of every nature and description that may now or hereafter be in, on or around the site of, or the work under, the contract covered by the Bond, and materials purchased or ordered for the performance of said contract whether in process of construction, in transit to the site, or in storage elsewhere;

(c)     all rights, title, and interest of the Contractor in and to all subcontracts, let or to be let, in connection with said contract covered by the Bond and in and to all surety bonds covering such subcontracts;

(d)     all actions, causes of actions, claims, and demands whatsoever with the Contractor's subcontractors, laborers, materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of the contract covered by the Bond, and against any surety or sureties of any such subcontractors, laborers, or materialmen; and

(e)     any and all rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in or growing in any manner out of the Bonds.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date, although nothing herein shall limit the right of the Surety to claim under any prior assignment.  With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond.  The assignment with respect to each Bond shall take effect on the date indicated, but only in the event of one or more of the following (hereinafter called "Events of Default"):

(a)     any abandonment, forfeiture, or breach of or failure, refusal, or inability to perform any contract covered by a Bond or any Bond liability or any breach of any said Bonds.;

(b)     the failure, delay, refusal, or inability of the Contractor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(c)     the failure to perform, or comply with, any of the terms, covenants, and obligations of this Agreement;

(d)     the failure to pay and discharge, when due, any other indebtedness of the Contractor to the Surety;

(e)     any assignment by the Contractor for the benefit of creditors; or the appointment or an application for the appointment of a receiver or trustee for the Contractor or its property, whether insolvent or not; or an application by the Contractor for reorganization or arrangement under the terms of the federal bankruptcy laws or any similar laws of any state, possession, or territory of the United States;

(f)     the commencement or continuation of any proceeding which deprives the Contractor of, or interferes with, its use of any of the supplies, tools, plant, machinery, equipment, or materials in, on or around the site of, or the work under the contract covered by any said Bond;

(g)     the Contractor is an individual, the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony or imprisoned, and if the Contractor is any other type of entity, any change or threat of change in the character, identity, control, management, beneficial ownership, or existence of the Contractor.

The foregoing assignment is for the purpose of (a) enabling the Surety to complete the performance of the obligations of the Contractor under the contract covered by a Bond and the payment of obligations incurred by the Contractor in the performance of such contract and (b) providing the Surety with collateral security for the obligations of the Contractor and Indemnitors to the Surety under this Agreement.

Upon the happening of an Event of Default, the Contractor authorizes and empowers the Surety, or any person or persons designated by the Surety, to execute in the name of the Contractor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property, and rights as are hereby assigned, transferred, or conveyed, and the Contractor hereby authorizes the Surety or such person or persons designated by the Surety to take immediate possession of such funds, property, and rights, to collect such sums as may be due and to endorse, in the name of the Contractor, and to collect, any checks, drafts, warrants, and other instruments made and issued in payment of any such funds.

Upon the happening of an Event of Default, the Surety shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use, and consume if necessary, the same in the performance of the contracts by itself or by others.

The Surety is authorized to assert and prosecute any right or claim hereby assigned, transferred, or conveyed in the name of the Contractor and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances.

The Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind.  The Surety may purchase any of the property at such sale.

This Agreement constitutes a Security Agreement to the Surety and a Financing Statement in accordance with the provisions of the Uniform Commercial Code.  The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under such Code, and the Contractor and Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties, and other places as the Surety shall deem necessary or desirable.

## COMPLETION OF WORK

**FIFTH:**  Upon the happening of an Event of Default described in the FOURTH section hereof, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors, to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses and expenses so incurred.

## DEPOSIT

**SIXTH:**  In order to exonerate or indemnify the Surety from actual or anticipated loss, the Contractor and Indemnitors, jointly and severally, shall, upon demand of the Surety, deposit with the Surety an amount, as determined by the Surety, as collateral security to the Surety before the Surety makes any payments.  Such deposit shall be, at Surety's option, money, property, or liens or security interests in property.  The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement whether or not the Surety has: (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds. The Surety shall have no obligation to invest, or to provide a return on the deposit.  The Contractor and Indemnitors shall be entitled to the return of any unused portion of the deposit upon termination of the liability of the Surety on the Bonds and the performance by the Contractor and Indemnitors of all obligations to the Surety under the terms of this Agreement.  To the extent Surety accepts collateral other than money, the Surety shall not be liable to any Indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.  Such collateral may be held or utilized by Surety; (a) until it has received evidence of its complete discharge from such claim or potential claims, (b) until it has been fully reimbursed for all loss, expenses, attorney's fees and unpaid premiums, and (c) until it has been fully discharged with regard to any liability in connection with any Bond issued by Surety. The Surety's demand shall be sufficient if sent by registered or certified mail to the Contractor and Indemnitors at the addresses stated herein, or at the addresses of the Contractor and Indemnitors last known to the Surety, whether or not actually received.

## TRUST FUND

**SEVENTH:**  The Contractor and Indemnitors covenant and agree that all payments received for or on account of any contract covered by a Bond shall be held as a trust fund in which the Surety has an interest for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## CONSENT TO CHANGES

**EIGHTH:**  The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in any Bond, and/or contract covered by a Bond, including, but not limited to, any change in the time for the completion of the contract and for payments or advances thereunder, to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes, or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or different conditions, provisions, and obligee and with the same or larger or smaller penalties, and it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or may substantially increase the liability of said Indemnitors.

## LOANS

**NINTH:**  The Surety may from time to time make or guarantee advances or loans to or for the account of the Contractor to be used in the performance of obligations of the Contractor under any contracts referred to in or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## RIGHT TO INFORMATION

**TENTH:**  At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to order credit reports on the Contractor and/or Indemnitors and shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts.

## DECLINATION OF SURETYSHIP

**ELEVENTH:**  The Surety may decline, in its sole discretion, to execute any Bond applied for without incurring any liability whatsoever to the Contractor and Indemnitors, and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement.  If the Surety shall execute a bid or proposal bond, or any similar undertaking, it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal bond.

## WAIVER OF NOTICE

**TWELFTH:**  The Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under any Bond, as well as notice of any and all liability of the Surety or any co-sureties under any Bond, to the end and effect that, the Contractor and the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## WAIVER OF HOMESTEAD RIGHT

**THIRTEENTH:**  The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale, or other legal process under the laws of any state, territory or possession.

## NOTICE OF CLAIMS

**FOURTEENTH:** If the Contractor or Indemnitors become aware of any demand, notice, or proceeding which may result in liability to the Surety under any bond, the Contractor or Indemnitors shall notify the Surety immediately thereof in writing.

## PROTECTION OF OTHER SURETIES

**FIFTEENTH:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties, and reinsuring sureties, as their interest may appear, and they shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder.

## SEPARATE ACTIONS AND SETTLEMENTS

**SIXTEENTH:** Separate suits may be brought against any or all of the parties hereto as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the parties hereto, and such settlement or compromise shall not affect the liability of any of the rest of the parties hereto.

## SURETYSHIP COVERED

**SEVENTEENTH:** This Agreement applies to all Bonds executed or procured by the Surety for the Contractor, in the Contractor's own name or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, until this Agreement is terminated in accordance with its terms.

## SUBORDINATION OF INDEMNITORS

**EIGHTEENTH:** The Indemnitors shall have no rights of indemnity against the Contractor or its property until the Contractor's obligations to the Surety under this Agreement have been satisfied in full.

## NATURE OF RIGHTS

**NINETEENTH:** All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against the Contractor or any one or more of the Indemnitors shall not release or waive any rights against the Contractor or any one or more of the Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Contractor or to await receipt of any dividends from the legal representatives of the Contractor before asserting its rights under this Agreement against the Indemnitors.

The rights, powers, and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor or Indemnitors whether by the terms of any other agreement, by operation of law, or otherwise. The Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTIETH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect, or invalidity had not existed.

If any of the provisions of this Agreement shall be held by a court of competent jurisdiction to be invalid, it is agreed that such invalidity or illegality should not invalidate the whole Agreement, but as to such jurisdiction this Agreement shall be construed as if it did not contain the provision or provisions held to be invalid or illegal in that particular jurisdiction, but only insofar as such construction does not affect the substance of this Agreement, and the rights and obligations of the parties hereto shall be construed and enforced accordingly in that jurisdiction.

## ATTORNEY-IN-FACT

**TWENTY-FIRST:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint, and designate the Surety or any person or persons designated by the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred, and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary or desirable by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## SERVICE OF PROCESS AGENTS

**TWENTY-SECOND:** If any proceeding is brought against the Surety in which the Surety desires to join the Contractor or Indemnitors by reason of the undertakings in this Agreement, the Contractor and Indemnitors agree that it will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the Contractor or Indemnitors. If the Contractor or Indemnitors fail upon such notice from the Surety to appear, the Contractor or Indemnitors hereby designate the Secretary of the State or territory in which such proceedings are pending as its agent for the service of process in any such proceedings. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which any one of the Contractor or Indemnitors reside, are domiciled, are doing business, or are found, the Contractor or Indemnitors not in the jurisdiction hereby designate the Contractor or Indemnitor in such jurisdiction as its agent to receive on its behalf service of process in such action.

BDJ 44(04-14)00

## TERMINATION AND MODIFICATION

**TWENTY-THIRD:** This is a continuing Agreement which remains in full force and effect until terminated. This Agreement may be terminated by the Contractor or Indemnitors upon thirty (30) days written notice sent by registered or certified mail to the Surety at its home office at 1100 Locust Street, Des Moines, IA 50391-2006 but any such notice of termination shall not operate to modify, bar, discharge, limit, affect, or impair the obligations of the Contractor or the Indemnitors with respect to Bonds executed prior to the date of such termination or with respect to Bonds executed after the date of such termination (a) upon the award of a contract to the Contractor, or a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (b) which the Surety has become obligated, prior to such date, to execute, or (c) any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such effective date, and renewals, substitutions and extensions thereof. Furthermore, such notice or termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by writing and executed by an officer of the Surety to form a part hereof.

### DISCHARGE FROM SURETYSHIP

**TWENTY-FOURTH:** The Contractor and Indemnitors will, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof and will furnish the Surety with satisfactory and conclusive evidence that there is no further liability under any Bond. The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond. Upon such discharge or release, the Surety shall return to the Contractor any portion of any premium paid which is unearned as a result of such discharge or release.

### EFFECTIVE DATE

**TWENTY-FIFTH:** This agreement shall be deemed effective as of the date indicated on the first page even though it may actually be signed subsequent to this date.

### REPRESENTATIONS

**TWENTY-SIXTH:** THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATION SET FORTH HEREIN.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

Avery Asphalt, Inc.
(Full Name of Contractor)

Attest _____

By _____
Irving Avery, President

Avery Holdings, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Equipment, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Asphalt Surfacing and Systems, Inc.

Attest _____

By _____
Aaron Avery, President

Regional Pavement Maintenance of Arizona, Inc.

Attest _____

By _____
Aaron Avery, President

STATE OF __Colorado__

COUNTY OF __El Paso__          ss.:

### CORPORATE ACKNOWLEDGMENT

On this __25__ day of __August__, in the year __2017__, before me personally come(s) Irving Avery to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Colorado Springs, CO that he/she is the President of Avery Asphalt, Inc. the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation; and that he/she signed his/her name thereto by like order.

NOTARY: _____
(Signature and title of official taking acknowledgment)
(TO BE SIGNED BY NOTARY)

Comm. Expires: 5/9/20

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Colorado_

COUNTY OF _El Paso_                    ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) Aaron Avery to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Colorado Springs, CO that he/she is the President of Avery Asphalt Surfacing and Systems, Inc. the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____

(Signature and title of official taking acknowledgment)

**(TO BE SIGNED BY NOTARY)**

_Comm. Expires  5/9/20_

**CORPORATE ACKNOWLEDGMENT**

STATE OF _Colorado_

COUNTY OF _El Paso_                    ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) Aaron Avery to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Colorado Springs, CO that he/she is the President of Regional Pavement Maintenance of Arizona, Inc. the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____

(Signature and title of official taking acknowledgment)

**(TO BE SIGNED BY NOTARY)**

_Comm. Expires: 5/9/20_

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF _Colorado_

COUNTY OF _El Paso_                    ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) Earlena M. Avery, Managing Member of the Limited Liability Company of Avery Holdings, LLC to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____

(Signature and title of official taking acknowledgment)

**(TO BE SIGNED BY NOTARY)**

_Comm Expires: 5/9/20_

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF _Colorado_

COUNTY OF _El Paso_                    ss.:

On this _25_ day of _August_, in the year _2017_, before me personally come(s) Earlena M. Avery, Managing Member of the Limited Liability Company of Avery Equipment, LLC to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____

(Signature and title of official taking acknowledgment)

**(TO BE SIGNED BY NOTARY)**

_Comm. Expires: 5/9/20_

**TRUST ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____                    ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, Trustee of the ____to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Trust.

NOTARY: _____

(Signature and title of official taking acknowledgment)

**(TO BE SIGNED BY NOTARY)**

BDJ 44(04-14)00


**Nationwide®**
is on your side

*RMRO Bond Office, 9380 Station Street*
*Ste. 100, Lone Tree, CO 80124*
*(800)253-0394 ext. 8893326*
*FAX (877) 277-4690*

Acknowledgement of Receipt
Of Indemnity Agreement

September 12, 2017

Avery Asphalt, Inc.
7770 Venture Street
Colorado Springs, CO 80915

Dear Mr. Avery:

This is to acknowledge receipt of an indemnity agreement dated <u>August 25, 2017</u> for
NATIONWIDE MUTUAL INSURANCE COMPANY, AMCO INSURANCE COMPANY,
and/or ALLIED PROPERTY & CASUALTY INSURANCE COMPANY for losses which might
be sustained by reason of executing surety bonds wherein <u>Avery Asphalt, Inc.</u> is principal. A
copy of the agreement is enclosed herein for your records. Please review the agreement
carefully.

This agreement is continuous in nature and may be terminated only by the provision contained in
the agreement.

Sincerely,

Anita R. Calderon, Commercial Service Rep. III
(Contract Surety) – Rocky Mountain Region
Surety & Fidelity/Management Liability and Specialty

Enclosure

 **Nationwide®**

## AMENDMENT NO. ___1___ TO THE GENERAL AGREEMENT OF INDEMNITY

**This Amendment shall be attached to and form a part of the General Agreement of Indemnity for** <u>Avery Asphalt, Inc.</u> **made and entered into by and in favor of the Surety, dated** <u>August 25, 2017</u> **and as may have been amended from time to time (hereinafter the "Agreement"). It is hereby agreed that:**

I.   All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

II.   This Amendment shall take effect and form a part of the Agreement immediately upon execution.

III.   The following individual(s) and/or business entities shall be added to the Agreement as an Indemnitor(s) and shall be bound by all the Agreements terms relative to Bonds issued pursuant to the Agreement, whether such Bonds were issued before or after the:

    A. Execution of this Amendment; or

    B. Date of the Agreement.

| List of Indemnitor(s) |
|---|
| LBLA Ventures, Inc. |
| |
| |
| |
| |
| |

(Space Left Intentionally Blank)

All other terms, conditions and exclusions of the General Agreement of Indemnity remain unchanged.

IN WITNESS WHEREOF, we have signed and sealed this Amendment on this 18th day of April 2019

By_____/____
(Name and Title of the Officer of the Surety)

_____)_____)
**All Signatories Initial Here**

Page 2 of 5 Amendment No. 1 to the General Agreement of Indemnity dated August 25, 2017

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

ATTEST/WITNESS: _____

**Business Indemnitor:**

LBLA Ventures, Inc.

_____ (SEAL)

By: _____

Aaron Avery, President

(Name and Title)

Tax ID No.: 83-2055295

Business Address: _____

7770 Venture Street

Colorado Springs, CO 80951

## BUSINESS ACKNOWLEDGEMENT

State of Colorado

County of El Paso

On this 18th day of April, 2019, personally came before me, Aaron Avery who is the President _____ of LBLA Ventures, Inc.
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)

Notary Public

My Commission Expires: May 22, 2023

MAGGIE ANDREWS
NOTARY PUBLIC · STATE OF COLORADO
NOTARY ID 20154020411
MY COMMISSION EXPIRES MAY 22, 2023

ATTEST/WITNESS: _____

**Business Indemnitor:**

_____

_____

_____ (SEAL)

By: _____

(Name and Title)

Tax ID No.: _____

Business Address: _____

_____

_____

## BUSINESS ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is
the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)

Notary Public

My Commission Expires: _____

SNP-G-6 (8-18)

Page 3 of 5 Amendment No. _1_ to the General Agreement of Indemnity dated <u>August 25, 2017</u>

WITNESS:

**Individual Indemnitor:**

_____

Signature:_____

Printed Name: _____

Social Security No.: _____

Home Address: _____

_____

WITNESS:

**Individual Indemnitor:**

_____

Signature:_____

Printed Name: _____

Social Security No.: _____

Home Address: _____

_____

**INDIVIDUAL ACKNOWLEDGMENT(S)**

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)

_____
Notary Public
My Commission Expires:_____

WITNESS:

**Individual Indemnitor:**

_____

Signature:_____

Printed Name: _____

Social Security No.: _____

Home Address: _____

_____

WITNESS:

**Individual Indemnitor:**

_____

Signature:_____

Printed Name: _____

Social Security No.: _____

Home Address: _____

_____

**INDIVIDUAL ACKNOWLEDGMENT(S)**

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)

_____
Notary Public
My Commission Expires:_____

Page 4 of 5 Amendment No. 1 to the General Agreement of Indemnity dated <u>August 25, 2017</u>

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

**ATTEST/WITNESS:**                                    **Limited Partnership  Indemnitor:**

_____        _____

                                                     _____

                                                                                                            (SEAL)

                                                     By: _____

                                                     _____
                                                     (Name and Title)

Tax ID No.: _____        Business Address: _____

                                                     _____

                                                     _____

**LIMITED PARTNERSHIP ACKNOWLEDGEMENT**

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me, _____ who is the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                     _____ (SEAL)
                                                     Notary Public

                                                     My Commission Expires: _____

**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____        _____

                                                     _____
                                                                                                            (SEAL)

                                                     By: _____

                                                     _____
                                                     (Name and Title)

Tax ID No.: _____        Trust/Trustee Address: _____

                                                     _____

                                                     _____

**TRUST ACKNOWLEDGEMENT**

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me,_____ who is the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                     _____ (SEAL)
                                                     Notary Public

                                                     My Commission Expires: _____

Page 5 of 5 Amendment No. 1 to the General Agreement of Indemnity dated August 25, 2017

**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____          _____

                                                          _____
                                                                                                    (SEAL)

                                                          By: _____

                                                          _____
                                                          (Name and Title)

Tax ID No.: _____       Trust/Trustee Address: _____

                                                          _____

                                                          _____


## TRUST ACKNOWLEDGEMENT

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                          _____ (SEAL)
                                                          Notary Public

                                                          My Commission Expires: _____


**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____          _____

                                                          _____
                                                                                                    (SEAL)

                                                          By: _____

                                                          _____
                                                          (Name and Title)

Tax ID No.: _____       Trust/Trustee Address: _____

                                                          _____

                                                          _____


## TRUST ACKNOWLEDGEMENT

**State of** _____

**County of** _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                          _____ (SEAL)
                                                          Notary Public

                                                          My Commission Expires: _____

# EXHIBIT C



**Jennings Strouss**
LAW FIRM

**Patrick F. Welch**
Attorney/Abogado

**P** 602.262.5847  |  **F** 602.495.2781
*pwelch@jsslaw.com*

**Jennings, Strouss & Salmon, P.L.C.**
One East Washington Street, Suite 1900
Phoenix, Arizona 85004-2554

*jsslaw.com*

November 9, 2020

VIA CERTIFIED MAIL

November 9, 2020

Regional Pavement Maintenance of
Arizona, Inc.
Attn: Aaron Avery, President
2435 South 6th Avenue
Phoenix, AZ 85003

Avery Holdings, LLC
Attn: Earlena M. Avery, Managing Member
1770 E 69th Ave
Denver, Colorado 80229

Avery Equipment, LLC
Attn: Earlena M. Avery, Managing Member
1770 E 69th Ave
Denver, Colorado 80229

Avery Asphalt Surfacing and Systems, Inc.
Attn: Aaron Avery, President
7770 Venture Street
Colorado Springs, Colorado 80951

Avery Asphalt, Inc.
Attn: Irving Avery, President
1770 E 69th Ave
Denver, Colorado 80229

LBLA Ventures, Inc.
Attn: Aaron Avery, President
7770 Venture Street
Colorado Springs, Colorado 80951

Re:  Principal:    Regional Pavement Maintenance of Arizona, Inc.
     Bond No.:     BD765810
     Obligee:      Koman Integrated Solutions, LLC.
     Project:      Buenos Aires National Wildlife Refuge

Dear Sirs and Madam:

Our firm represents Nationwide Insurance Company (hereinafter "Nationwide"), the surety that issued the above-referenced Bond and other bonds on behalf of Regional Pavement Maintenance of Arizona, Inc. and other related entities.

In exchange for Nationwide's issuance of the bonds, Regional Pavement Maintenance of Arizona, Inc. (hereinafter "Principal" or "RPMA"), Avery Holding, LLC, Avery Equipment, LLC, Avery Asphalt Surfacing and Systems, Inc., Avery Asphalt, Inc, and LBLA Ventures, Inc. (collectively with RPMA, the "Indemnitors"), entered into the enclosed General Agreement of Indemnity, dated August 25, 2017 (the "GAI") and related addendums. We encourage you to read the GAI carefully. This notice is addressed to each of you individually and collectively. If you are represented by counsel, please forward this letter to your counsel and have them respond to me by the date requested herein.

*Progressive culture. Innovative vision.*

7390150v1(88888.3030)

Regional Pavement Maintenance of Arizona, Inc.
Avery Holdings, LLC
Avery Equipment, LLC
Avery Asphalt Surfacing and Systems, Inc.
Avery Asphalt, Inc.
LBLA Ventures, Inc.
November 9, 2020
Page 2

Pursuant to Paragraph 2 of the GAI, RPMA and the Indemnitors agreed, among other things, to indemnify and keep indemnified Nationwide against liability for losses and expenses incurred or to be incurred by reason of Nationwide having executed bonds on behalf of RPMA or related entities and/or by reason of RPMA's failure to perform or comply with the terms of the GAI. Due to Nationwide's receipt of several claims on its bonds and the deteriorating financial condition of RPMA, we hereby request that RPMA and the Indemnitors take all action that is necessary to exonerate and indemnify Nationwide from all liabilities, losses, and expenses to which it may be exposed to or that it may incur in connection with bonds issued on their behalf.

Pursuant to Nationwide's rights under Paragraph 6 of the GAI, we hereby request that RPMA and the Indemnitors deposit with Nationwide collateral in the amount of Eight-Hundred Seventy-Two Four-Hundred and 00/100 Dollars ($872,400.00) to protect Nationwide against losses, costs, and expenses as may be incurred in this matter. As its investigation continues, Nationwide may reassess its collateral needs. Accordingly, Nationwide reserves its right to increase its collateral demand as it deems necessary in its sole discretion.

In the alternative, please note that in lieu of posting the collateral demanded in the preceding paragraph, Nationwide will accept replacement bonds from another surety provided Nationwide's obligations under the captioned bonds are immediately exonerated.

In addition to the above collateral, Nationwide hereby requests, in accordance with its rights pursuant to Paragraph 10 of the GAI, that RPMA and the Indemnitors provide Nationwide with RPMA and the Indemnitors' current financial statements and tax returns for 2017 to present. Further, on behalf of Nationwide, we request prompt and reasonable access to the books, records, and accounts of RPMA and the Indemnitors for inspection.

Please respond to the demands herein within five (5) days from the date of this letter. Please take notice of the consequences of your failure to respond as outlined in the GAI.

Finally, please understand that this communication is being sent to RPMA and the Indemnitors under a full reservation of Nationwide's legal and equitable rights and defenses under the GAI, any other agreements of indemnity, contracts, agreements, bonds, or applicable law. Nothing herein is intended, or should be construed as, a modification or waiver of Nationwide's rights and defenses.

Regional Pavement Maintenance of Arizona, Inc.
Avery Holdings, LLC
Avery Equipment, LLC
Avery Asphalt Surfacing and Systems, Inc.
Avery Asphalt, Inc.
LBLA Ventures, Inc.
November 9, 2020
Page 3


Thank you for your attention to this matter.  If you have any questions, please do not hesitate to contact me.

Very truly yours,

JENNINGS, STROUSS & SALMON, P.L.C.

By

     Patrick F. Welch

PFW/bms

Enclosure:  General Agreement of Indemnity, dated August 25, 2017

(Page 1 of 7)



MK 9-7-17

 **Nationwide®**
is on your side

**Continuing Agreement of Indemnity
Contractor's Form**

Bond Department
Nationwide Mutual Insurance Company
AMCO Insurance Company
Allied Property and Casualty Insurance Company
Farmland Mutual Insurance Company
Nationwide Agribusiness Insurance Company
1100 Locust St.  Department 2006
Des Moines, IA 50391-2006

THIS AGREEMENT of Indemnity, made and entered into this <u>25th</u> day of <u>August, 2017.</u>
by <u>Regional Pavement Maintenance of Arizona, Inc.</u>
<u>2435 S. 6th Ave., Phoenix, AZ  85003</u>  (hereinafter called the Contractor) and
<u>Avery Holdings, LLC; Avery Equipment, LLC; Avery Asphalt Surfacing and Systems, Inc; Avery Asphalt, Inc.,</u>

and any one of or a combination of NATIONWIDE MUTUAL INSURANCE COMPANY, NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, AMCO INSURANCE COMPANY, ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY, DEPOSITORS INSURANCE COMPANY, NATIONWIDE INSURANCE COMPANY OF AMERICA, FARMLAND MUTUAL INSURANCE COMPANY, NATIONWIDE AGRIBUSINESS INSURANCE COMPANY, DES MOINES, IOWA, (hereinafter referred to individually or collectively as "Surety").

**WITNESSETH:**

WHEREAS, the Contractor in the performance of contracts and the fulfillment of its obligations, whether in its own name solely or jointly with others, may desire or be required to give or procure certain surety bonds, undertakings, or instruments of guarantee, and to renew, continue, or substitute the same from time to time, or to give or procure new bonds, undertakings or instruments of guarantee with the same or different penalties and/or conditions in renewal, continuation, extension or substitution thereof (any one or more of which are hereinafter called "Bond" or "Bonds") or the Contractor or Indemnitors may request the Surety to refrain from canceling said Bonds; and

WHEREAS, at the request of the Contractor and the Indemnitors and upon the express condition that this Continuing Agreement of Indemnity Contractor's Form (the "Agreement") should be given, the Surety has executed or procured to be executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Contractor; and

WHEREAS, the Indemnitors have a substantial, material, and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from canceling said Bonds.

NOW, THEREFORE, in consideration of the foregoing premises and of the covenants set forth herein, the Contractor and Indemnitors for themselves, their heirs, executors, administrators, successors, and assigns, jointly and severally, hereby covenant and agree with the Surety, its successors and assigns, as follows:

**PREMIUMS**

FIRST:  The Contractor and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its rate filings, its manual of rates, or as otherwise agreed upon, until the Contractor or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all liability by reason thereof.

**INDEMNITY**

SECOND:  The Contractor and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and attorney fees and expenses) which the Surety may sustain and incur:

(a)      by reason of having executed or procured the execution of the Bonds,

(b)      by reason of the failure of the Contractor or Indemnitors to perform or comply with the covenants and conditions of this Agreement, or

(c)      in enforcing any of the covenants and conditions of this Agreement.

Payment by reason of the aforesaid causes shall be made to the Surety by the Contractor and Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor.  Such payment to the Surety by the Indemnitors shall be in an amount as determined by the Surety.

In the event of any payment by the Surety, the Contractor and Indemnitors further agree that in any accounting between the Surety and the Contractor, or between the Surety and the Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.

The Surety shall have the right to adjust, settle, or compromise any claim demand, suit, or judgment upon the Bonds, and any such payment or compromise shall be binding upon the Contractor and Indemnitors and be included as a liability, loss, or expense covered by this indemnity.

If the Contractor and the Indemnitors request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgment, the Contractor and Indemnitors shall (a) give notice to the Surety to this effect, and (b) simultaneously deposit with the Surety cash or collateral satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered, or that may be rendered, with interest, costs, expenses, and attorneys' fees and expenses, including those of Surety.

**JOINT AND SEVERAL**

**THIRD:** The obligations of the Contractor and Indemnitors shall be joint and several. In addition, this Agreement shall be binding on the Contractor, Indemnitors, and their respective heirs, executors, administrators, successors, and assigns; and the same shall inure to the benefit of Surety, its successors and assigns.

**ASSIGNMENT**

**FOURTH:** With respect to each Bond executed by the Surety, the Contractor, with the Indemnitors hereby consenting, hereby assigns, transfers, conveys, and sets over to the Surety as collateral to secure the obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Contractor to the Surety:

(a) any and all monies due or to become due to the Contractor under or as a result of the contract covered by the Bond and all other contracts whether bonded or not in which the Contractor has an interest, including but not limited to progress payments, deferred payments, retained percentages, compensation for extra work, and proceeds of damage claims;

(b) all rights, title, and interest of the Contractor in and to all supplies, tools, plant, equipment, and materials of every nature and description that may now or hereafter be in, on or around the site of, or the work under, the contract covered by the Bond, and materials purchased or ordered for the performance of said contract whether in process of construction, in transit to the site, or in storage elsewhere;

(c) all rights, title, and interest of the Contractor in and to all subcontracts, let or to be let, in connection with said contract covered by the Bond and in and to all surety bonds covering such subcontracts;

(d) all actions, causes of actions, claims, and demands whatsoever with the Contractor's subcontractors, laborers, materialmen, or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, or other equipment in connection with or on account of the contract covered by the Bond, and against any surety or sureties of any such subcontractors, laborers, or materialmen; and

(e) any and all rights of the Contractor in, and growing in any manner out of, all contracts referred to in the Bonds, or in or growing in any manner out of the Bonds.

The foregoing assignment shall be effective as of the date of the execution and delivery of this Agreement as to each contract covered by Bonds executed prior to such date, although nothing herein shall limit the right of the Surety to claim under any prior assignment. With respect to any Bond executed and delivered on or after the date of execution and delivery of this Agreement, the assignment shall be effective as of the effective date of the Bond. The assignment with respect to each Bond shall take effect on the date indicated, but only in the event of one or more of the following (hereinafter called "Events of Default"):

(a) any abandonment, forfeiture, or breach of or failure, refusal, or inability to perform any contract covered by a Bond or any Bond liability or any breach of any said Bonds.;

(b) the failure, delay, refusal, or inability of the Contractor to pay bills or other indebtedness incurred in, or in connection with, the performance of any contract covered by a Bond;

(c) the failure to perform, or comply with, any of the terms, covenants, and obligations of this Agreement;

(d) the failure to pay and discharge, when due, any other indebtedness of the Contractor to the Surety;

(e) any assignment by the Contractor for the benefit of creditors; or the appointment or an application for the appointment of a receiver or trustee for the Contractor or its property, whether insolvent or not; or an application by the Contractor for reorganization or arrangement under the terms of the federal bankruptcy laws or any similar laws of any state, possession, or territory of the United States;

(f) the commencement or continuation of any proceeding which deprives the Contractor of, or interferes with, its use of any of the supplies, tools, plant, machinery, equipment, or materials in, on or around the site of, or the work under the contract covered by any said Bond;

(g) the Contractor is an individual, the Contractor's dying, absconding, disappearing, incompetency, being convicted of a felony or imprisoned, and if the Contractor is any other type of entity, any change or threat of change in the character, identity, control, management, beneficial ownership, or existence of the Contractor.

The foregoing assignment is for the purpose of (a) enabling the Surety to complete the performance of the obligations of the Contractor under the contract covered by a Bond and the payment of obligations incurred by the Contractor in the performance of such contract and (b) providing the Surety with collateral security for the obligations of the Contractor and Indemnitors to the Surety under this Agreement.

Upon the happening of an Event of Default, the Contractor authorizes and empowers the Surety, or any person or persons designated by the Surety, to execute in the name of the Contractor any instruments deemed necessary or desirable by the Surety to provide absolute title to the Surety of any funds, property, and rights as are hereby assigned, transferred, or conveyed, and the Contractor hereby authorizes the Surety or such person or persons designated by the Surety to take immediate possession of such funds, property, and rights, to collect such sums as may be due and to endorse, in the name of the Contractor, and to collect, any checks, drafts, warrants, and other instruments made and issued in payment of any such funds.

Upon the happening of an Event of Default, the Surety shall have the right to take immediate possession of the supplies, tools, plant, equipment, and materials and to use, and consume if necessary, the same in the performance of the contracts by itself or by others.

The Surety is authorized to assert and prosecute any right or claim hereby assigned, transferred, or conveyed in the name of the Contractor and to compromise and settle any such right or claim on such terms as it considers reasonable under the circumstances.

The Surety may sell any property assigned to it pursuant to this Agreement at public or private sale, with or without notice, at any time or place, without incurring any liability of any kind. The Surety may purchase any of the property at such sale.

This Agreement constitutes a Security Agreement to the Surety and a Financing Statement in accordance with the provisions of the Uniform Commercial Code. The Surety may make such additions to this Agreement as may be necessary or desirable to permit its filing as a Financing Statement under such Code, and the Contractor and Indemnitors will execute and deliver such further instruments as may be necessary or desirable to permit either the filing of this Agreement as a Financing Statement or the filing of a Financing Statement based upon this Agreement as a Security Agreement in such states, counties, and other places as the Surety shall deem necessary or desirable.

(Page 3 of 7)

## COMPLETION OF WORK

FIFTH:  Upon the happening of an Event of Default described in the FOURTH section hereof, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors, to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses and expenses so incurred.

## DEPOSIT

SIXTH:  In order to exonerate or indemnify the Surety from actual or anticipated loss, the Contractor and Indemnitors, jointly and severally, shall, upon demand of the Surety, deposit with the Surety an amount, as determined by the Surety, as collateral security to the Surety before the Surety makes any payments.  Such deposit shall be, at Surety's option, money, property, or liens or security interests in property.  The Surety shall have the right to use the deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which the Contractor and Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement whether or not the Surety has: (a) established a reserve; (b) made any payments; or (c) received any notice of claims under the Bonds.  The Surety shall have no obligation to invest, or to provide a return on the deposit.  The Contractor and Indemnitors shall be entitled to the return of any unused portion of the deposit upon termination of the liability of the Surety on the Bonds and the performance by the Contractor and Indemnitors of all obligations to the Surety under the terms of this Agreement.  To the extent Surety accepts collateral other than money, the Surety shall not be liable to any indemnitor for any diminution in value, loss or destruction of such collateral and shall have no obligation to maintain or insure such collateral.  Such collateral may be held or utilized by Surety; (a) until it has received evidence of its complete discharge from such claim or potential claims, (b) until it has been fully reimbursed for all loss, expenses, attorney's fees and unpaid premiums, and (c) until it has been fully discharged with regard to any liability in connection with any Bond issued by Surety.  The Surety's demand shall be sufficient if sent by registered or certified mail to the Contractor and Indemnitors at the addresses stated herein, or at the addressed of the Contractor and Indemnitors last known to the Surety, whether or not actually received.

## TRUST FUND

SEVENTH:  The Contractor and Indemnitors covenant and agree that all payments received for or on account of any contract covered by a Bond shall be held as a trust fund in which the Surety has an interest for the payment of obligations incurred in the performance of the contract and for labor, materials, and services furnished in the prosecution of the work provided in said contract or any authorized extension or modification thereof; and further, it is expressly understood and declared that all monies due and to become due under any contract or contracts covered by the Bonds are trust funds, whether in the possession of the Contractor or Indemnitors or otherwise, for the benefit of and for payment of all such obligations in connection with any such contract or contracts for which the Surety would be liable under any of said Bonds, which said trust also inures to the benefit of the Surety for any liability or loss it may have or sustain under any said Bonds, and this Agreement and declaration shall also constitute notice of such trust.

## CONSENT TO CHANGES

EIGHTH:  The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors, to assent to any change whatsoever in any Bond, and/or contract covered by a Bond, including, but not limited to, any change in the time for the completion of the contract and for payments or advances thereunder, to assent to or take any assignment or assignments, to execute or consent to the execution of any continuations, extensions, renewals, enlargements, modifications, changes, or alterations of any Bond and to execute any substitute or substitutes therefor, with the same or different conditions, provisions, and obligee and with the same or larger or smaller penalties, and it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or may substantially increase the liability of said Indemnitors.

## LOANS

NINTH:  The Surety may from time to time make or guarantee advances or loans to or for the account of the Contractor to be used in the performance of obligations of the Contractor under any contracts referred to in or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Contractor, or guaranteed by the Surety for the purposes of any such contracts, and all costs and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Contractor to the Surety when due, shall be presumed to be a loss by the Surety for which the Contractor and the Indemnitors shall be responsible, notwithstanding that said money or any part thereof should not be so used by the Contractor.

## RIGHT TO INFORMATION

TENTH:  At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to order credit reports on the Contractor and/or Indemnitors and shall have the right to reasonable access to the books, records, and accounts of the Contractor and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the financial condition of the Contractor and Indemnitors, the status of the work under contracts being performed by the Contractor, the condition of the performance of such contracts, and payments of accounts.

## DECLINATION OF SURETYSHIP

ELEVENTH:  The Surety may decline, in its sole discretion, to execute any Bond applied for without incurring any liability whatsoever to the Contractor and Indemnitors, and the Contractor and Indemnitors agree to make no claim to the contrary in consideration of the Surety's receiving this Agreement.  If the Surety shall execute a bid or proposal bond, or any similar undertaking, it shall have the right to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal bond.

## WAIVER OF NOTICE

TWELFTH:  The Indemnitors hereby waive notice of the execution of any Bond and of the acceptance of this Agreement, and the Contractor and the Indemnitors hereby waive all notice of any default, or any other act or acts giving rise to any claim under any Bond, as well as notice of any and all liability of the Surety or any co-sureties under any Bond, to the end and effect that, the Contractor and the Indemnitors shall be and continue to be liable hereunder, notwithstanding any notice of any kind to which they might have been or be entitled, and notwithstanding any defenses they might have been entitled to make.

## WAIVER OF HOMESTEAD RIGHT

THIRTEENTH:  The Contractor and the Indemnitors hereby waive, so far as their respective obligations under this Agreement are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution, sale, or other legal process under the laws of any state, territory or possession.

(Page 4 of 7)

## NOTICE OF CLAIMS

**FOURTEENTH:** If the Contractor or Indemnitors become aware of any demand, notice, or proceeding which may result in liability to the Surety under any bond, the Contractor or Indemnitors shall notify the Surety immediately thereof in writing.

## PROTECTION OF OTHER SURETIES

**FIFTEENTH:** In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties, and reinsuring sureties, as their interest may appear, and they shall have the right to maintain an action or actions on this Agreement to enforce their rights hereunder.

## SEPARATE ACTIONS AND SETTLEMENTS

**SIXTEENTH:** Separate suits may be brought against any or all of the parties hereto as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising. The Surety is hereby expressly authorized to settle any claim based upon this Agreement with any one or more of the parties hereto, and such settlement or compromise shall not affect the liability of any of the rest of the parties hereto.

## SURETYSHIP COVERED

**SEVENTEENTH:** This Agreement applies to all Bonds executed or procured by the Surety for the Contractor, in the Contractor's own name or as co-adventurer with others, whether prior or subsequent to the execution and delivery of this Agreement, until this Agreement is terminated in accordance with its terms.

## SUBORDINATION OF INDEMNITORS

**EIGHTEENTH:** The Indemnitors shall have no rights of indemnity against the Contractor or its property until the Contractor's obligations to the Surety under this Agreement have been satisfied in full.

## NATURE OF RIGHTS

**NINETEENTH:** All rights and remedies of the Surety under this Agreement shall be cumulative, and the exercise of or failure to exercise any right or remedy at any time shall not be an election of remedy or a waiver of any other right or remedy. Failure of the Surety to pursue any remedy against the Contractor or any one or more of the Indemnitors shall not release or waive any rights against the Contractor or any one or more of the Indemnitors.

The Surety is not required to exhaust its remedies or rights against the Contractor or to await receipt of any dividends from the legal representatives of the Contractor before asserting its rights under this Agreement against the Indemnitors.

The rights, powers, and remedies given to the Surety by this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the Surety may have or acquire against the Contractor or Indemnitors whether by the terms of any other agreement, by operation of law, or otherwise. The Contractor and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to time heretofore or hereafter, with or without notice to or knowledge of the Contractor and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the execution or procurement of said Bonds, from the Contractor or Indemnitors or others, it being expressly understood and agreed by the Contractor and the Indemnitors that any and all other rights which the Surety may have or acquire against the Contractor and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and not in lieu of, the rights afforded the Surety under this Agreement.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTIETH:** In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any reason, such failure, defect, or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any of the parties executing the same, but each and every party so executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect, or invalidity had not existed.

If any of the provisions of this Agreement shall be held by a court of competent jurisdiction to be invalid, it is agreed that such invalidity or illegality should not invalidate the whole Agreement, but as to such jurisdiction this Agreement shall be construed as if it did not contain the provision or provisions held to be invalid or illegal in that particular jurisdiction, but only insofar as such construction does not affect the substance of this Agreement, and the rights and obligations of the parties hereto shall be construed and enforced accordingly in that jurisdiction.

## ATTORNEY-IN-FACT

**TWENTY-FIRST:** The Contractor and Indemnitors hereby irrevocably nominate, constitute, appoint, and designate the Surety or any person or persons designated by the Surety as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights of the Contractor and Indemnitors assigned, transferred, and set over to the Surety in this Agreement, and in the name of the Contractor and Indemnitors to make, execute, and deliver any and all additional or other assignments, documents, or papers deemed necessary or desirable by the Surety in order to give full effect not only to the intent and meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Contractor and Indemnitors hereby ratify and confirm all acts and actions taken and done by the Surety as such attorney-in-fact.

## SERVICE OF PROCESS AGENTS

**TWENTY-SECOND:** If any proceeding is brought against the Surety in which the Surety desires to join the Contractor or Indemnitors by reason of the undertakings in this Agreement, the Contractor and Indemnitors agree that it will, upon written notice of the Surety to do so, voluntarily appear in such proceedings and accept service of process and other papers either personally or by an attorney of the Contractor or Indemnitors. If the Contractor or Indemnitors fail upon such notice from the Surety to appear, the Contractor or Indemnitors hereby designate the Secretary of the State of territory in which such proceedings are pending as its agent for the service of process in any such proceedings. With respect to any action brought by the Surety on this Agreement in a jurisdiction in which any one of the Contractor or Indemnitors reside, are domiciled, are doing business, or are found, the Contractor or Indemnitors not in the jurisdiction hereby designate the Contractor or Indemnitor in such jurisdiction as its agent to receive on its behalf service of process in such action.

(Page 5 of 7)

### TERMINATION AND MODIFICATION

**TWENTY-THIRD:** This is a continuing Agreement which remains in full force and effect until terminated. This Agreement may be terminated by the Contractor or Indemnitors upon thirty (30) days written notice sent by registered or certified mail to the Surety at its home office at 1100 Locust Street, Des Moines, IA 50391-2005 but any such notice of termination shall not operate to modify, bar, discharge, limit, affect, or impair the obligations of the Contractor or the Indemnitors with respect to Bonds executed prior to the date of such termination or with respect to Bonds executed after the date of such termination (a) upon the award of a contract to the Contractor, or a bid or proposal with respect to which the Surety has executed a bid or proposal bond or similar undertaking prior to such date, or (b) which the Surety has become obligated, prior to such date, to execute, or (c) any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such effective date, and renewals, substitutions and extensions thereof. Furthermore, such notice or termination shall operate only with respect to those parties upon whose behalf such notice of termination shall have been given. The termination by any one Indemnitor shall not affect the liability of any other Indemnitor.

This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by writing and executed by an officer of the Surety to form a part hereof.

### DISCHARGE FROM SURETYSHIP

**TWENTY-FOURTH:** The Contractor and Indemnitors will, at any time upon the request of the Surety, procure the discharge of the Surety from any Bond and from all liability by reason thereof and will furnish the Surety with satisfactory and conclusive evidence that there is no further liability under any Bond. The Surety may, at any time, take such action as it deems necessary or proper to obtain its release from any and all liability under any Bond. Upon such discharge or release, the Surety shall return to the Contractor any portion of any premium paid which is unearned as a result of such discharge or release.

### EFFECTIVE DATE

**TWENTY-FIFTH:** This agreement shall be deemed effective as of the date indicated on the first page even though it may actually be signed subsequent to this date.

### REPRESENTATIONS

**TWENTY-SIXTH:** THE UNDERSIGNED REPRESENT TO THE SURETY THAT THEY HAVE CAREFULLY READ THE ENTIRE AGREEMENT AND THAT THERE ARE NO OTHER AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR MODIFY THE OBLIGATION SET FORTH HEREIN.

IN WITNESS WHEREOF, we have hereunto set our hands and seals the day and year first above written.

Regional Pavement Maintenance of Arizona, Inc.
(Full Name of Contractor)

Attest _____

By _____
Aaron Avery, President

Avery Holdings, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Equipment, LLC

Attest _____

By _____
Earlena M. Avery, Managing Member

Avery Asphalt Surfacing and Systems, Inc.

Attest _____

By _____
Aaron Avery, President

Avery Asphalt, Inc.

Attest _____

By _____
Irving Avery, President

### CORPORATE ACKNOWLEDGMENT

STATE OF __CO__ }
                } ss.:
COUNTY OF __EL PASO__ }

On this __25__ day of __August__, in the year __2017__, before me personally come(s) Aaron Avery to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of Colorado Springs, CO that he/she is the President of Regional Pavement Maintenance of Arizona, Inc., the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____
(Signature and title of official taking acknowledgment)
(TO BE SIGNED BY NOTARY)

Comm. Expires: 5/9/20

BDJ 44(04-14)00

Page 5 of 6

(Page 6 of 7)

**CORPORATE ACKNOWLEDGMENT**

STATE OF __CO__

COUNTY OF __El Paso__     ss.:

On this __25__ day of __August__, in the year __2017__, before me personally come(s) <u>Aaron Avery</u> to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of <u>Colorado Springs, CO</u> that he/she is the <u>President</u> of <u>Avery Asphalt Surfacing and Systems, Inc.</u> the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires  5/9/20

**CORPORATE ACKNOWLEDGMENT**

STATE OF __CO__

COUNTY OF __El Paso__     ss.:

On this __25__ day of __August__, in the year __2017__, before me personally come(s) <u>Irving Avery</u> to me known, who, being by me duly sworn, deposes and says that he/she resides in the City of <u>Colorado Springs, CO</u> that he/she is the <u>President</u> of <u>Avery Asphalt, Inc.</u> the corporation described in and which executed the foregoing instrument; that he/she knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by like order.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires:  5/9/20

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF __CO__

COUNTY OF __El Paso__     ss.:

On this __25__ day of __August__, in the year __2017__, before me personally come(s) <u>Earlena M. Avery</u>, Managing Member of the Limited Liability Company of <u>Avery Holdings, LLC</u> to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires:  5/9/20

**LIMITED LIABILITY COMPANY ACKNOWLEDGMENT**

STATE OF __CO__

COUNTY OF __El Paso__     ss.:

On this __25__ day of __August__, in the year __2017__, before me personally come(s) <u>Earlena M. Avery</u>, Managing Member of the Limited Liability Company of <u>Avery Equipment, LLC</u> to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Limited Liability Company.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

Comm. Expires:  5/9/20

**TRUST ACKNOWLEDGMENT**

STATE OF _____

COUNTY OF _____     ss.:

On this _____ day of _____, in the year _____, before me personally come(s) _____, Trustee of the ____ to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he/she executed the same as and for the act and deed of the said Trust.

NOTARY: _____
(Signature and title of official taking acknowledgment)
**(TO BE SIGNED BY NOTARY)**

BDJ 44(04-14)00

(Page 7 of 7)

 **Nationwide** is on your side

*RMRO Bond Office, 9380 Station Street*
*Ste. 100, Lone Tree, CO  80124*
*(800)233-0394 ext. 8893326*
*FAX (877) 277-4690*

Acknowledgement of Receipt
Of Indemnity Agreement

September 12, 2017

Regional Pavement Maintenance of Arizona, Inc.
2435 S. 6th Ave.
Phoenix, AZ  85003

Dear Mr. Avery:

This is to acknowledge receipt of an indemnity agreement dated August 25, 2017 for
NATIONWIDE MUTUAL INSURANCE COMPANY, AMCO INSURANCE COMPANY,
and/or ALLIED PROPERTY & CASUALTY INSURANCE COMPANY for losses which might
be sustained by reason of executing surety bonds wherein Regional Pavement Maintenance of
Arizona, Inc. is principal.  A copy of the agreement is enclosed herein for your records.  Please
review the agreement carefully.

This agreement is continuous in nature and may be terminated only by the provision contained in
the agreement.

Sincerely,

Anita R. Calderon, Commercial Service Rep. III
(Contract Surety) – Rocky Mountain Region
Surety & Fidelity/Management Liability and Specialty

Enclosure

 **Nationwide®**

## AMENDMENT NO. ___1___ TO THE GENERAL AGREEMENT OF INDEMNITY

This Amendment shall be attached to and form a part of the General Agreement of Indemnity for Regional Pavement Maintenance of Arizona, Inc. made and entered into by and in favor of the Surety, dated **August 25, 2017** and as may have been amended from time to time (hereinafter the "Agreement"). It is hereby agreed that:

I.  All capitalized terms not defined in this Amendment shall have the meaning given them in the Agreement.

II.  This Amendment shall take effect and form a part of the Agreement immediately upon execution.

III.  The following individual(s) and/or business entities shall be added to the Agreement as an Indemnitor(s) and shall be bound by all the Agreements terms relative to Bonds issued pursuant to the Agreement, whether such Bonds were issued before or after the:

    A.  Execution of this Amendment; or

    B.  Date of the Agreement.

| List of Indemnitor(s) |
| --- |
| LBLA Ventures, Inc. |
| |
| |
| |
| |
| |

(Space Left Intentionally Blank)

All other terms, conditions and exclusions of the General Agreement of Indemnity remain unchanged.

IN WITNESS WHEREOF, we have signed and sealed this Amendment on this 16ᵗʰ day of April, 2019

By_____/____

(Name and Title of the Officer of the Surety)

**All Signatories Initial Here**

Page 2 of 5 Amendment No. _1_ to the General Agreement of Indemnity dated <u>August 25, 2017</u>

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

ATTEST/WITNESS:

Business Indemnitor:

LBLA Ventures, Inc.

_____ (SEAL)

By: _____

Aaron Avery, President
(Name and Title)

Business Address: _____

7770 Venture Street

Colorado Springs, CO 80951

Tax ID No.: **83-2055295**

## BUSINESS ACKNOWLEDGEMENT

State of Colorado

County of El Paso

```
┌──────────────────────────────────────────┐
│           MAGGIE ANDREWS                  │
│  NOTARY PUBLIC - STATE OF COLORADO        │
│      NOTARY ID 20154020411                │
│  MY COMMISSION EXPIRES MAY 22, 2023       │
└──────────────────────────────────────────┘
```

On this 18th day of April, 2019, personally came before me, Aaron Avery who is
the President of LBLA Ventures, Inc.
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)
Notary Public
My Commission Expires: May 22nd, 2023

ATTEST/WITNESS:

Business Indemnitor:

_____ (SEAL)

By: _____

(Name and Title)

Business Address: _____

Tax ID No.: _____

## BUSINESS ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is
the _____ of _____
to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)
Notary Public
My Commission Expires: _____

SNP-G-6 (8-18)

Page 3 of 5 Amendment No. _1_ to the General Agreement of Indemnity dated <u>August 25, 2017</u>

**WITNESS:**                                    Individual Indemnitor:

_____          Signature:_____

                                             Printed Name: _____

                                             Social Security No.: _____

                                             Home Address: _____

                                             _____

**WITNESS:**                                    Individual Indemnitor:

_____          Signature:_____

                                             Printed Name: _____

                                             Social Security No.: _____

                                             Home Address: _____

                                             _____

## INDIVIDUAL ACKNOWLEDGMENT(S)

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)                                  _____

                                        Notary Public
                                        My Commission Expires:_____

**WITNESS:**                                    Individual Indemnitor:

_____          Signature:_____

                                             Printed Name: _____

                                             Social Security No.: _____

                                             Home Address: _____

                                             _____

**WITNESS:**                                    Individual Indemnitor:

_____          Signature:_____

                                             Printed Name: _____

                                             Social Security No.: _____

                                             Home Address: _____

                                             _____

## INDIVIDUAL ACKNOWLEDGMENT(S)

State of _____

County of _____

On this _____ day of _____, 20_____ personally came before me, _____ and

_____ to be known to be the individual(s) who executed the foregoing instrument and acknowledged that he/she/they exe-
cuted the same as his/her/their voluntary act and deed.

(SEAL)                                  _____

                                        Notary Public
                                        My Commission Expires:_____

Page 4 of 5 Amendment No. _1_ to the General Agreement of Indemnity dated <u>August 25, 2017</u>

By affixing their signatures hereto, each Indemnitor signing on behalf of a business entity warrants that each is duly authorized by Indemnitor to bind Indemnitor hereto.

**ATTEST/WITNESS:**                              Limited Partnership  Indemnitor:

_____           _____

                                            _____

                                                                    (SEAL)

                                            By: _____

                                            _____

                                            (Name and Title)

Tax ID No.: _____           Business Address: _____

                                            _____

                                            _____

### LIMITED PARTNERSHIP ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me, _____ who is the _____ of _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)

Notary Public

My Commission Expires: _____

**ATTEST/WITNESS:**                              Trust Indemnitor:

_____           _____

                                            _____

                                                                    (SEAL)

                                            By: _____

                                            _____

                                            (Name and Title)

Tax ID No.: _____           Trust/Trustee Address: _____

                                            _____

                                            _____

### TRUST ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me,_____ who is the _____ of _____ to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

_____ (SEAL)

Notary Public

My Commission Expires: _____

Page 5 of 5 Amendment No. 1 to the General Agreement of Indemnity dated August 25, 2017

**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____                     _____

                                                                                    **(SEAL)**

                                                     By: _____

                                                     _____
                                                     (Name and Title)

Tax ID No.: _____                    Trust/Trustee Address: _____

                                                     _____

                                                     _____


### TRUST ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                     _____ **(SEAL)**
                                                     Notary Public

                                                     My Commission Expires: _____


**ATTEST/WITNESS:**                                    **Trust Indemnitor:**

_____                     _____

                                                     _____
                                                                                    **(SEAL)**

                                                     By: _____

                                                     _____
                                                     (Name and Title)

Tax ID No.: _____                    Trust/Trustee Address: _____

                                                     _____

                                                     _____


### TRUST ACKNOWLEDGEMENT

State of _____

County of _____

On this _____ day of _____, 20___, personally came before me,_____ who is

the _____ of _____

to me known to be the persons who executed the foregoing and acknowledged that they had the authority to execute the same as the act of said business entity.

                                                     _____ **(SEAL)**
                                                     Notary Public

                                                     My Commission Expires: _____